*86 The opinion of the Court was delivered by
O’Neall, J.
This was an action for an injury done to the plaintiff, a passenger on the defendant’s road. When it occurred he was standing on the front of the platform of, the rear passenger car. It, was contrary to a notice on the right hand of the door of the car on which the plaintiff was standing, that “ passengers should not stand on the platform.” The road was in an unfinished state: it had reached east of the Great Pedee within seven miles of Marion. The train stopped at a point where the stages had been in the habit of taking up the passengers; the Conductor left the cars to inquire whether they should stop there, as heretofore, or proceed further: the passengers seeing one stage-coach and persons, and horses in the woods at this point, supposed they had gone as far they could on the railway: many rose from their seats, and several got on the platforms, amongst the rest the plaintiff on the rear platform of the forward car. The halt was but for a few minutes, and as the Conductor ordered the train to proceed, the plaintiff stepped on the forward platform of the hindmost car: his seat was in the preceding or forward car. The engine was reversed, — the tender in front, — the baggage car and the passenger cars drawn by the engine, which was backing up the road. In a few moments the tender, engine and baggage car were thrown off — the two passenger cars remained on the track, but were jammed together, and their platforms, rear and forward, were much injured. The plaintiff was caught between the wrecks of the platforms of the two cars, the wreck of the platform of the front car pressing his body against the wreck of the platform of the rear car. He was with difficulty and after much suffering extricated. When extricated, it was found that his left leg was crushed above the ancle, so that it had to be subsequently amputated: the other leg was also much injured: it subsequently healed but still is very tender. The accident was occasioned by the “ breaking of the cleat at the end of one of the railsthe cross-ties were put down too *87 wide apart, and were insufficiently spiked. The passenger engine had never before passed over the road — though a freight engine of eighteen tons, with a train of seven cars loaded with iron, weighing one hundred and five thousand pounds, passed over this part of the road about'fifteen minutes before the passenger train. _The passenger train, as proved for the defendant, was moving when the accident occurred, at the rate of from five to eight miles per hour. None of the passengers inside the cars were materially injured. It was proved by an assistant engineer, and the runner in the service of the company, that the plaintiff said it was his own fault. This was immediately after he received the injury. The passengers who were in company, and examined, did not state any such declarations. He was confined' at Marion for some time: while thus confined, Eoxworth said, that the plaintiff told him, he was standing on the platform ; if he had been in his seat the accident would not have occurred. Dr. Godbold and Mr. Game-well, who were present, and attending the plaintiff, said they heard no such remarks. As the plaintiff left the house of Mrs. Godbold, he said to her, as she stated, that he left his seat, and was on the platform, and that he attributed the fault to himself for leaving his seat. ‘ Mr. McKagin said he was then present, and heard no such remark.
The jury found a verdict for the plaintiff for ten thousand dollars damages, and the defendant moved for a new trial, on three grounds: the third was abandoned on the argument.
The first ground attributes error to the presiding Judge in that he did not charge the jury, if they believed the testimony, as to the plaintiff’s declarations, they should find for the defendant. The Judge very properly presented the plaintiff’s declarations as part of the case: if they were believed, they were to be put into the scales with the other proof, and given their appropriate weight. It is very probable the jury attached little weight to them, even if they believed they were made, which is, certainly, doubtful from the opposing proof. Those made *88 at the time of the accident, when the plaintiff was kept alive by pouring brandy down his throat, ought not to weigh a feather. Por a man in such circumstances could neither know nor state correctly anything. So, too, the declarations to Foxworth and to Mrs. Godbold, were made before he could have been at all informed of the state of the road or the cause of the injury. The whole case will depend on the second ground, which attributes the injury to the want of care of the plaintiff and not to the negligence of the defendant.
I begin the statement of my views of the law of this part of the case by calling attention first to the fact, that there is no evidence that the plaintiff knew his position on the platform was a prohibited place. His seat, it will be recollected, was in the forward car: the notice proved was in the rear ear on the platform of which he was standing when the accident occurred. That such a notice is not enough to discharge the liability of the company to a passenger is, I think, clear from Story on Bail. sec. 558.
If the Conductor had said to the plaintiff, as was his duty, “you are in an improper place,” and he .had still persisted in remaining, it might have been, that this would have excused the company from any consequences which might have followed. This not being proved, and no notice being brought home to the plaintiff that he was in a prohibited place, there can be nothing against him inferred from the fact, that he was on the platform.
It must be next remarked, that the jury have negatived the want of care on the part of the plaintiff, and have found that the injury was attributable to negligence on the part of the defendant. After such a finding, I do not see how the defendant can be discharged. For admit that the plaintiff was where he ought not to have b,een, and yet, if it in no way contributed to the accident, which caused to him the ineffable injury, which it inflicted, how can the defendant be discharged? The negligence of the company is the proximate cause, and for it the defendant must answer in damages.
*89 The facts, that the road was run in an unfinished state, contrary to the twenty-fourth section of the charter, 11 Stat. 391, or that the portion of the road which, when it was completed, was authorized to be run, was not “ in readiness for transportation” as required by the 26th section; that the cross-ties were too wide apart, that the rails were insufficiently spiked, that the accident occurred, as proved by one of the defendant’s witnesses, from the “breaking of a cleat at the end of one of the rails,” sufficiently show that the cause of the plaintiff’s injury was, by the jury, properly ascribed to the legal negligence of the defendant.
I agree entirely to the. principle extracted from the case of Hyeman vs. The Western R. R. Co., 16 Barbour, 353, that “ where a party” (a passenger) “ is injured on a rail road, there is from that fact alone, prima facie evidence of neglect in the management of the road, which evidence, defendants are bound to rebut.” If this be the true rule as I am sure it is, how would this case, tested by it, stand ? The injury is abundantly shown, and the prima facie, case thus plainly made out. How is this rebutted ? By proving the clearest case of legal negligence on the part of the company which has ever been shown. This is attempted to be excused by alleging, that the plaintiff was also, partially at least, in fault, by standing on the platform. I have already shown enougli to show that he ought not to be visited with any consequence from it; but concede that he was partly in fault, 'still he will be entitled to retain his verdict. The case of Kerwhaker vs. The Cleaveland, Columbus, and Cincinnati R. R. Co., 3. Liv. Law, Mag. 341, is a very elaborate judgment upon this point. The great length of the case prevents anything save a brief statement, and an extract of a single principle with two exceptions. The case was for running over, and killing the plaintiff’s hogs, on the road of the defendant. The law of Ohio seems to be like our own, that animals may feed and pasture on uninclosed *90 land. There is there, too, no law requiring railways to be fenced. The principle after a most extended review of English and American cases by Judge Bartley, is stated, that “ where parties are mutually in fault, or in other words where negligence of the same nature, in each party has co-operated to produce the injury, the party sustaining the loss is without remedy.” Test this case by the rule thus stated. What negligence was there on the part of the plaintiff of the same nature with that of the defendant? None whatever. To this rule thus stated, he mentions four exceptions, either of two of which would, it seems to me, cover this case. The first is — “The injured party although in fault to some extent .at the time, may notwithstanding this be entitled to reparation in damages for an injury arising from the negligence of another,- which he could not have avoided, by the exercise of ordinary and reasonable 'Care, on the part of the injured party.” If the plaintiff’s position on the platform, although a post of danger, was assumed to look out for the stage coaches, and it was not forbidden by the Conductor, I do .not see, how he can be even considered, as at all negligent, or in fault. But let it be assumed that he was. How could he have avoided the injury which he received ? By resuming his seat is the answer. How does that appear ? No person was seriously injured within the car. But still the plaintiff’s misfortune might have even there befallen him. For we know, on such occasions, “ one is taken, and another left.” The second exception is “ where the negligence of the defendant is the proximate cause of the injury, but that of the plaintiff only remote, consisting of some act or omission, not occurring at the time of the injury, the action for reparation is maintainable.” Here I acknowledge the plaintiff’s position was at the moment of the accident wrong, still the proximate cause of the injury was the turning over of the engine. His being on the platform did not necessarily subject him to injury or danger, in an overturn, no more than being in the body of the car. If he had fallen off the.platform, when the train was *91 in motion, then indeed he would have borne his own injury. For then his own act would have been, as much the proximate cause, as any negligent act of the‘defendant,
But after all, this case was one for the jury, as I shall proceed to show. Before I turn to a few authorities, I may be indulged in remarking, that while I would lay no unnecessary liabilities on rail road companies, yet I know from a somewhat intimate acquaintance with this mode of transportation, how important it is to make no unnecessary relaxation of the principle, which demands from all concerned, in the management of a railway, unceasing vigilance and care. A jury does well therefore, in a case where a passenger is injured, in demanding from the company clear proof that it proceeded from no neglect on its part. In Aldridge vs. The Great Western Railway Company, 2 Railway Cases, 852, the case may be shortly stated, as follows : The plaintiff on his own land, but in about eleven yards of the rails of the defendant’s road erected his rick or stack of beans. This stack was ignited and burnt by the sparks from the defendant’s engine, which passed in the usual way. The question submitted was whether the plaintiff on this statement could recover ? The Court consisting of Tindall, C. J., Coltman and Maulé, held it was a proper case for a jury. It may be useful to examine that case, and briefly compare it with this. Was not the plaintiff there in precisely the same degree of fault as this plaintiff? Tie put his bean rick or stack in a dangerous position, and in which it was liable to be burnt; and yet it was not necessarily to be so. . There the Court thought the jury must resolve the question. And Tindall, C. J., said “ I am not prepared to say, that the fact of the sparks of fire or igneous matter escaping from the engine, though one in ordinary use, might not have been in the opinion of the 'jury, an element of negligence.”
The case of Carpus vs. The London and Brighton Railway Company, 3 Railway Cases, 692, though not an exact authority *92 to the same point, yet ruled that the company was liable as carriers for an injury done to a passenger, and therefore that notice was not to be given "according to the charter for doing improperly or omitting to do anything required by it. By this decision, I do not understand the company was to be charged as a common carrier, but as a carrier of passengers was liable for negligence, and that the injury was prima facie evidence thereof.
The very well considered case of Beers vs. The Housatonic R. R. Co., 19 Conn. Rep. 506, is full to the point now before me. There the plaintiff claimed for injuring his cattle, which were driven along a highway crossing the defendant’s road; the son and a servant of the plaintiff were driving the cattle (fifteen or sixteen head); they attempted to cross about, or near the time of the usual approach of the cars; they were scattered along the road, as is usual in driving; the plaintiff’s son was too far from the intersection of the highway and railroad to drive the cattle off, the servant was nearer and by the direction of the son attempted to drive the cattle from the railway. He was unable to do it — they were struck by the engine and several injured and rendered wholly useless. The defence on the part of the defendant, these as here, was'that the plaintiff’s own negligence or want of care contributed to the injury, and that in law he could not recover. What said the Court. Storks, J., who delivered the judgment, in his second sentence, announced the principle, which-governed that case, and which also will this: He said, “ when it is considered, that negligence or a want of due care, was here the main fact to be ascertained, and that the facts, or more correctly speaking, the circumstances thus given in evidence were only evidential of such main fact, and conducing to prove it, it is obvious, that the Court could not have pronounced, that those circumstances proved the existence of negligence or a want of due care, on the part of the plaintiff, without encroaching on the rights of the jury, whose exclusive province it was, to weigh *93 the evidence, and determine whether it was sufficient for that purpose.”
This case and Kerwhaker vs. The Cleaveland, Columbus, and Cincinnati R. R. Co., were for injuries to stock on the track of the road, and certainly a rail road company is not bound to as high degree of care and diligence as to them, as they are to passengers. In this State, it has been ruled in Danner vs. The South Carolina R. R. Co., that a prima facie case of negligence is made out by showing the killing or injury of stock on the railway. " In the N. E. R. R. Co. vs. Sineath 8 Rich. 193-4-5, I stated my dissatisfaction with that decision. For the company is under no other obligation to the owners, than that arising out of the Law maxim, “ Sic utere t-uo ut alienum non Icedas.” This would reverse the rule of Danner’s case and place the burden of proving negligence on the owner of the stock. But surely if a prima facie case of negligence is made out by showing the fact that stock was killed or injured on the rail road, much more ought the same result to follow from a passenger being injured. For as to him, the company undertake to carry safely as far as human care and foresight will go. This liability can only be discharged by showing that all reasonable skill and diligence have been employed. McClenaghan vs. Brock, 5 Rich. 17.
The case of Felder vs. The South Carolina R. R. Co., 2 McM. 403, was cited by the defendant. In that case, the Court non-suited the plaintiff, because the plaintiff’s slave placed himself on the rail road and was there killed by the engine passing over him, while he was asleep : The decision assumed, that this was the voluntary act of the slave, and that the negligence of the company in not clearing the track of grass, so that he might have been seen by the runner was not therefore the proximate cause of the injury. Certainly no just inference can be drawn from it, in favor of the defendant. Indeed, since Banner's case, I do not see how a nonsuit could now be ordered in such a case.
*94 The case of Herring vs. The Wil. and Haleigh Railroad Co., 10 Iredell’s N. C. Rep. 402, was for killing one and injuring another of the plaintiff’s slaves on the track. That ease does not reach this. In it, however, Judge Pearson denies, what is ruled in Danner’s case, that the- killing, or injuring of the plaintiff’s property on the road is prima facie evidence of neglect. This was true, as to slaves having reason and will, the subject which he was then considering. “ What amounts to negligence is a question of law,” as he tells us in another part of his opinion. This is true after the facts are ascertained; but as the jury have to ascertain them, it thus becomes a mixed question of law and fact. The Judge must tell them what is negligence; it is for them to say in most eases whether the facts sustain the definition. There is nothing in that case which affects the liability of the company for an injury to a passenger.
The motion is dismissed.
Wardlaw and Glover, JJ., concurred.