*Litchfield,*
July, 1849.

SELLECK *against* SELLECK :

Selleck
*v.*
Selleck.

### IN ERROR.

To suffer a ram 'to go at large, or out of the owner's enclosure, within the meaning of the 6th section of the statute relating to sheep, implies consent or willingness of the mind.

Though the statute intends to enforce strict care, on the part of the owner, in restraining his ram; it does not require such a degree of care, as amounts to an obligation on him to restrain the animal, at all events, unless prevented by some uncontroulable cause; nor any greater care than is usually taken by careful and prudent farmers in like cases.

The want of such care, either in restraining the animal, or in reclaiming it when at large, would afford sufficient proof, that it was suffered to go at large, within the meaning of the statute.

THIS was an action of debt, brought by *Harmon Selleck* against *Charles Selleck*, to recover the sum of ten dollars, being the penalty imposed by the statute " relating to sheep," §6., on the owner of a ram, who suffers it to go at large between the 1st day of *August* and the 1st day of *December*. The declaration alleged, that the defendant, at *Salisbury*, on the 17th day of *August*, 1846, was the owner of a certain ram, which he, then and there, suffered to go at large and out of his enclosure, contrary to the statute; which ram, being so at large, was found and taken up, by the plaintiff.

The cause was tried, on the plea of *Nil debet*, in the county court, *October* term, 1848.

The plaintiff claimed to have proved, by the deposition of *Olive Selleck*, the matters alleged in his declaration.

The defendant claimed to have proved, that he had confined the ram in question, from the 1st of *August*, 1846, to the time when it was taken up, in his field, surrounded by a fence of greater height than by law is required, and in every respect, a legal and sufficient fence; that he otherwise restrained and hampered the ram within such enclosure, during that period; that on the day the ram was taken up, the defendant verily believed that it was properly restrained in his enclosure; and that the ram, without the knowledge or consent of the defendant, and contrary to his wishes, escaped out of the enclosure; and on the day of such escape, before the defendant had knowledge thereof, it was taken up, by the plaintiff.

The defendant thereupon requested the court to charge the jury, that if they should find, that the ram was not out of said enclosure, by the sufferance of the defendant, their verdict should be in his favour. Or, if they should find, that the defendant had restrained the ram, in the manner claimed by him, and he verily believed it was properly restrained, and it escaped from the enclosure, contrary to the will of the defendant; in that case also, their verdict should be in his favour.

It was claimed by the plaintiff, that from all the evidence in the cause, the jury might reasonably infer, that the ram was unruly, and escaped, by the carelessness and neglect of the defendant. From some of the evidence it appeared, that the hampering was off, when the ram escaped, or soon after.

The court charged the jury, that if they should find, that the ram was found running at large, through any act or agency of the plaintiff, or any one acting for him, or by the agency of any other person than the defendant: or if it was running at large, through any providential cause, which was beyond the controul of the defendant, they should find for him. The court further charged the jury, that if they should be of opinion, that the ram was not running at large, by the defendant's sufferance, their verdict should be for him. But if they should find, that the defendant confined and hampered the ram in said enclosure, as claimed by him; and the field was surrounded by a sufficient and legal fence; and he believed that the ram was sufficiently restrained; and it escaped without his knowledge, and contrary to his wishes, and was, on the day of its escape, taken up by the plaintiff; such finding would not of itself furnish sufficient reason why their verdict should be for the defendant; and they might still find from all the evidence in the cause, that the ram was running at large, by the sufferance of the defendant, within the meaning of the statute, and their verdict might be for the plaintiff.

The jury returned a verdict for the plaintiff; and judgment being rendered thereon, the defendant filed a bill of exceptions, and brought a writ of error in the superior court, which was reserved for the advice of this court.

*Seymour* and *Warner*, for the plaintiff in error, after

having premised, that the statute on which this action is founded, is a penal statute, in derogation of the common law, and must therefore be construed strictly as against the defendant, and liberally in his favour, contended, 1. That if the animal was confined in a field surrounded by a legal and sufficient fence, and escaped therefrom, without the defendant's knowledge, and contrary to his will, such escape did not constitute a breach of the law. *Myers* v. *The State*, 1 *Conn. R.* 502. 505. The word "suffer," as used in the statute, is synonymous with *permit*, and implies *consent*.

<em>Litchfield,</em><br><em>July, 1849.</em><br>Selleck<br><em>v.</em><br>Selleck.

2. That that part of the charge which relates to the animal's being at large, through an act of *Providence*, or of the plaintiff, or a third person, was not only uncalled for, as neither party requested it, but was fitted to *mislead* the jury, as they would naturally infer therefrom, that *without* such act of *Providence*, or of the plaintiff, or a third person, the defendant *must of course be liable*. 15 *Conn. R.* 51. Such an inference is indeed unavoidable, to save this part of the charge from the imputation of utter impertinence. The jury were then given to understand, that although the animal was confined in an enclosure sufficiently fenced, and it escaped without the knowledge or consent of the owner, nothing would exempt him from liability, but an act of *Providence*, &c. Is this correct? Does the law make the owner of a ram, properly restrained, *insure* against its escape? Has he *suffered* the animal to go at large, within the meaning of the statute, when he has taken every precaution which the law requires, to prevent it?

*J. H. Hubbard* and *Averill*, for the defendant in error, after remarking, that the statute was made to promote the public good, and should be *liberally* expounded so as to effect that object and prevent the mischief, contended, 1. That the defendant had nothing to complain of, in regard to that part of the charge which related to his *suffering* the animal to go at large; for, taking all the parts of it together, it was *in his favour*. The charge was substantially this: First, if the ram was at large, by any act of the plaintiff, or of a third person, or by any act beyond the controul of the defendant, the verdict must be in his favour; secondly, if it was not at large, by the *sufferance* of the defendant, then also the ver-

dict must be for him.  If there had been nothing more in the charge, the defendant surely could not complain of it ; it was, thus far, all in his favour.

2. That the residue of the charge was unexceptionable. The defendant claimed to have proved certain facts, *viz.*, that he had confined and hampered the ram, in a field surrounded by a sufficient fence ; that he believed it was sufficiently restrained ; and that it escaped without his knowledge, and contrary to his wishes.  The court, in effect, said to the jury, if you find these facts to be proved, they are not, of themselves, conclusive in the defendant's favour ;—the ram may have been unruly ; the defendant may have left the bars down ; he may have suffered the hampering to get off ; he may have been otherwise chargeable with neglect in restraining the animal ;—you are to look not merely to the isolated facts selected, but to *all* the evidence in the cause ; and if you find from that evidence, that the ram was at large, by the sufferance of the defendant, within the meaning of the statute, your verdict may be, notwithstanding the facts referred to, for the plaintiff.  The record, it is true, does not, as it need not, state all the evidence in the cause ; but it does show, that the plaintiff claimed to have proved, that the ram was unruly ; that it had got its hamperings off ; and that it was at large, by the carelessness and neglect of the defendant.

3. That if the bill of exceptions does not present the claims of the parties and the evidence, with sufficient fullness and accuracy to enable the court to see that the charge was correct, it is the fault of the plaintiff in error ; and a reversal of the judgment will not be advised.

CHURCH, Ch. J.    This case involves a principle of some practical importance to agriculturists, and this alone gives it an interest worthy of our consideration.

Our only difficulty in deciding it, has been to understand certainly, what the county court has instructed the jury to be the law of the case.  From a careful examination of the charge, we suppose the doctrine of it to be, and that the jury must so have understood, that by the 6th section of the revised "Act relating to sheep," the owner of a ram is bound to exercise the same, or about the same, care in restraining

it from going at large, as the law requires from common carriers and inn-keepers, in the custody of goods committed to their keeping ; or that the fact that the animal is found at large, is so nearly conclusive proof of culpable negligence, or actual assent, that it can only be explained, by proving, that it was occasioned, by an act of Providence, the act of the opposite party, or the action of some power beyond the controul of the owner ; and that a prudent and reasonable care, exercised, by keeping up lawful and sufficient fences, and other proper and usual restraints suited to the nature and propensities of the animals, will not excuse.

To this view of the responsibility of owners we cannot assent. Neither the nature of the case, the principles of the common law, nor the language of the statute, will justify it.

The statute referred to, provides, " That if the owner of any ram *shall suffer* him to go at large, or out of his enclosure, &c., such owner shall forfeit ten dollars to the person who shall find and take up said ram." This law is penal, and cannot be extended, by a latitude of construction, beyond the obvious import of its language ; there being nothing in the nature of its subject matter demanding a more extensive application of it. If the *owner suffers* the animal to go at large, or out of his enclosure, he incurs the penalty ; otherwise, not. To suffer an act to be done, by a person who can prevent it, is to permit or consent to it—to approve of it, and not to hinder it. It implies a willingness of the mind. Such is not only the popular, but the proper meaning of the language of the statute ; and so the legislature understood it. But the charge of the county court would subject the owner of the ram to the penalties of this law, who had used all the care and the prudence usual with the most careful men, and all in his power, to restrain him ; and who, by his care and conduct, had furnished the most satisfactory evidence that the animal had escaped contrary to his will.

Similar language is found in other statutes, and where its meaning cannot be considered as doubtful, and has received, in one instance at least, a judicial construction. Thus, by section 102 of the statute " Concerning crimes and punishments," a penalty is inflicted upon a taverner, who *shall suffer* his guests to use certain games in his house. And by sections 3 and 4 of the statute relating to taverns, a penalty

is incurred, by a tavern-keeper, who *shall suffer* minors and others to sit drinking in their houses.   And section 6 of the statute relating to the sabbath, subjects to fine, the proprietor of any coach, who *shall suffer* or allow any person to travel in it on the Lord's day, except from necessity.   A case under this provision of the law, has been considered, by this court.   *Myers* v. *The State,* 1 *Conn. R.* 502.   It was there decided, if the coach of the defendant was hired, by a traveller, to be used on *Sunday,* for a lawful purpose ; if without the consent of the owner, it was in fact used for an unnecessary purpose ; that no penalty was incurred.   And the court very properly said, "unless this construction be adopted, a man may be convicted of a crime, when he had no intent to violate the law."

It may be difficult to fix, with precision, the exact degree of diligence necessary to be observed under this provision of the law.   It must be regulated somewhat, by the propensities of these animals to escape, and by the common usages of diligent farmers in restraining them.   That strict care was intended to be enforced, by the legislature, we infer from the obvious purpose of the law, and from the fact that a penalty is annexed for a violation of it ; but not such a degree of care as amounts to an obligation on the part of the owner of these sheep to restrain them, at all events, unless prevented by the intervention of some uncontroulable cause ; nor any greater care than is usually taken, by careful and prudent farmers, in like cases.   And if there be any want of such care, either in restraining or reclaiming such sheep when at large, this would afford proof enough, that they were suffered to run at large, within the meaning of the law.   And to this effect the jury should have been instructed ; and not to have been told, or left reasonably to infer, that even the highest diligence—a care excluding all fault—was not sufficient to save from the penalty of this statute.

The court did say, to be sure, that "the jury should find for the defendant, if they should be of opinion that said ram was not running at large, by his the *defendant's sufferance.*" And this is claimed as a strong charge in favour of the defendant !   But this was no instruction to the jury at all. They could form no opinion whether the ram was at large, by the defendant's sufferance, until they knew what, in point

of law, would constitute such sufferance ; or what degree of care the law required ; or what amount of negligence it punished.

*Litchfield,*
July, 1849.

We are of opinion, that in the judgment of the county court there is manifest error.

HINMAN, J., was of the same opinion.

STORRS and ELLSWORTH, Js., concurred in the general principles, laid down by the Chief Justice, but dissented from the view taken by him of the charge.

WAITE, J. was not present.

Judgment to be reversed.