The following facts were agreed upon by the state and the defendant. The defendant is the owner of a 1949 Mack dump truck, properly registered by the owner in accordance with the statute so providing, to carry a gross weight of 30,100 pounds. The truck on March 1, 1961, was being operated *Page 483 
by one Trombly, an employee of the defendant, in a southerly direction on route 147, a state highway in East Granby, with a load of cold-patch tar, when he was stopped by a state trooper. The gross weight of the truck when stopped was 35,200 pounds, an overload of 5,100 pounds above its registered gross weight. A warrant was issued for the arrest of the defendant as the owner of the truck.
After this agreed statement of facts was presented, testimony was then offered by the defendant as follows: The driver employee, Trombly, testified he had been an employee of the defendant for about two years and at the time that he was hired was told never to overload the truck. The truck was loaded under the supervision of a foreman of a corporation that had leased the truck. The employee received a tonnage ticket with each load. He did not look at the slip but put it in his pocket. He had to get a tonnage ticket at each load so the foreman could tell how much material was used for a particular job on a particular day. He could not recollect what had become of the ticket pertaining to this particular load.
The defendant testified that he warned his employee two years previously, when Trombly was hired, besides "telling him right along," not to overload. The truck, with the employee as driver, had been leased or hired out to Masco Construction Company. The defendant was to be paid on an hourly basis rather than by number of loads or tonnage for use of the truck and driver. The foreman of the leasing company controlled and had charge of the loading of the truck and directed the defendant's employee where to deliver each load. The defendant had no actual knowledge of the overloading of the truck and was never present on the job during loadings. *Page 484 
The defendant's reasons of appeal formulate two main issues. The first issue, which, he states, is the chief issue in the appeal, is that the court found the defendant guilty although the defendant had no knowledge, either actual or constructive, concerning the overloading of the truck. He bases this contention on his interpretation of the word "allow" in the statute as including "knowingly" or "knowledge" of the defendant owner as to overloads. Therefore, it remains to be resolved whether under § 14-267 of the General Statutes the state must prove as an element of the crime knowledge by the owner, either actual or constructive, of the overloading of the truck.
The pertinent part of the statute in issue states: "No person shall operate any commercial motor vehicle, nor shall the owner of any commercial vehicle allow such motor vehicle to be operated, on any public highway or bridge . . . ." The remainder of the statute sets forth the penalties for its violation and is not an issue in this appeal.
The defendant insists that the word "allow" as used in the statute places the duty upon the state to prove actual or constructive knowledge on the part of the defendant before he can be convicted of the crime alleged under the statute. Therefore, we are required to determine and define the scope and meaning of the word "allow" as used in the statute. Webster's New International Dictionary (2d Ed.) defines the word "allow": "To approve of; . . . to sanction; to accept . . . [t]o admit; concede; . . . permit . . . [Syn.] suffer, tolerate." It further defines its use: "ALLOW and PERMIT are frequently used as convertible terms; but allow is less formal, and may imply little more than forbearance of prohibition . . . . To SUFFER . . . is . . . a . . . synonym for allow . . . ." We have examined the decisions of our Supreme Court of Errors wherein it *Page 485 
attempts to define these words as used in a criminal statute, to aid us in an interpretation of the statute in question.
In State v. Poplowski, 104 Conn. 493, 497, the court had before it the interpretation of a statute which provided: "Every person entitled to the custody of any horse . . . who shall permit the same to be at large upon any highway or common, without a keeper, shall be fined . . . ." The accused was the owner of two horses which he had allowed to be at large upon a highway without a keeper. The court said that the word "suffer," as defined in Selleck v.Selleck, 19 Conn. 501, "has a practically identical meaning with the word `permit' in the statute we are considering." Id., 498. It was held that the statute was intended to embrace not only an affirmative or voluntary act of the owner or custodian but also the failure to exercise due care to restrain the horses as a reasonably prudent person would have, under the same circumstances. In Selleck v. Selleck,
supra, 505, the statute provided: "[I]f the owner of any ram shall suffer him to go at large . . . ." The court said: "To suffer an act to be done, by a person who can prevent it, is to permit or consent to it — to approve of it, and not to hinder it. It implies a willingness of the mind. . . . [A]nd so the legislature understood it."
Therefore the state may prove facts which will justify the trier in finding beyond a reasonable doubt that the motor vehicle was overloaded (1) either by the voluntary act of the owner or custodian, or (2) by the reason of his negligent failure to prevent overloading, as a reasonably prudent and careful truck operator or owner would have done under like circumstances.
In Guastamachio v. Brennan, 128 Conn. 356, 357, the court construed a regulation of the liquor control *Page 486 
commission which provided that "[n]o permittee shall allow, permit or suffer" any immoral activities in or upon the permit premises. The responsibility for making effective this prohibition was placed upon the permittees.
Knowledge by the owner of the overloading is not an essential element of the crime; and to make the statute effective, the owner is held responsible, regardless of knowledge, by reason of his failure to take effective measures to prevent and prohibit conduct by those controlling the trucks under his authority. The rule of strict accountability is imposed by the statute on the owner. Knowledge is not an essential element of proof to establish the commission of a crime when the legislature sees fit to omit such an element. Id., 360.
The legislative intent of the statute under discussion is to prevent the destruction of public highways in the state from overloaded vehicles. The heavy penalties imposed by the legislature indicate the seriousness of the crime. Once the defendant voluntarily permitted and allowed the employee and truck to be operated and hired out to an independent company, he could and should have foreseen the probability that overloading could occur unless strict precautions were taken by him to prevent violations. His failure to do so is an act of criminal negligence in accordance with the statute holding the owner responsible.
The word "allow" in the statute is modified by or subject to the words "to be operated." The defendant would have the court give a narrow and technical construction to one word taken out of context in the statute. "The rule of strict construction does not require that the narrowest technical meaning be given to the words employed in a criminal statute in disregard of their context and in frustration of the *Page 487 
obvious legislative intent." United States v. Corbett,215 U.S. 233, 242, cited with approval in State v.Faro, 118 Conn. 267, 274. We cannot exalt technicalities above substance. We conclude the word "allow" is effective to make the defendant responsible, regardless of any knowledge on his part.
There remains the question whether the statute requires the state to prove criminal intent or guilty knowledge as a necessary element of a crime. "`Althoughprima facie and as a general rule there must be a mind at fault before there can be a crime, it is not an inflexible rule and a statute may relate to such a subject-matter and may be so framed as to make an act criminal, whether there has been any intention to break the law or otherwise to do wrong or not.'" State v. Nussenholtz, 76 Conn. 92, 95, and cases therein cited. Guilty knowledge or guilty intent need not be an essential element or attribute within the meaning of the word as here employed. The legislature may supply the intent if it desires. "There are many statutes in the nature of police regulations for the protection of the morals of the community, . . . under which, either because it is impracticable to . . . prove knowledge, or because it is regarded as reasonable under the circumstances that the doer of the act should take the risk of knowing the facts, it is generally held that the prohibited act is criminal, notwithstanding" the ignorance of the accused. Clark, Criminal Law (3d Ed.), pp. 92, 93; State v. Gaetano, 96 Conn. 306, 316, and cases cited. "There is a large class of criminal statutes, of which the one now under consideration as well as those hereinbefore referred to are examples, which are properly construed as imposing a penalty when the thing forbidden is done, no matter how innocently, and in such a case the substance of the statute is that a man shall take care that the statutory direction be observed, and that if he fails to do so he *Page 488 
acts at his peril." State v. Turner, 60 Conn. 222,229. Whether knowingly is or is not to be implied in the definition of a statutory crime must be determined from the general scope of the act and from the nature of the evils to be avoided. We are satisfied that "knowingly" and "guilty knowledge" are not to be implied as essential parts of the crime defined in § 14-267.
The legislative intent to place the responsibility for the violation of § 14-267 on both the operator and the owner is given emphasis by specific reference in § 14-107, entitled "Criminal liability of owner." This statute states: "Either the owner or the operator of any motor vehicle, or both, may be prosecuted for violation of any provision of . . . [section] 14-267." Section 14-267 was originally enacted as chapter 400, § 32, of the 1921 Public Acts. The statute affected only operators of commercial motor vehicles: "No person shall operate any commercial motor vehicle on any public highway or bridge . . . ." The penalty prescribed was a $500 fine or imprisonment for not more than one year, or both. The motor vehicle commissioner, in his discretion, upon conviction could require a $500 bond, to be forfeited upon a second conviction. At the same session, the legislature enacted chapter 400, § 45, which provided that either the owner or the operator could be prosecuted for a violation of § 32. In 1927, the legislature enacted chapter 311, § 2, of the 1927 Public Acts, amending the statute (now § 14-267) to include not only the operator but also the owner. In 1953, the legislature amended the statute by increasing the money penalties as they appear today and eliminating the jail sentence. Cum. Sup. 1955, § 1317d. The motor vehicle commissioner was given the privilege of revoking the registration of any commercial vehicle so operated, and he "may refuse to issue a registration for such *Page 489 
motor vehicle during such time as he deems reasonable"; and the statute has remained unchanged to date.
The election of gross weight when registering his trucks rests upon the owner. The legislature realized that an owner could plead ignorance of the employee's doings and that enforcement of the statute would be difficult, as only the owner can remedy the situation and not the employee. The highway commissioner may issue to owners special permits for overweight vehicles on certain specified occasions, or may restrict the owner from operating over certain highways in the use of his trucks. See §§ 14-266,14-268, 14-269, and 14-270 of the General Statutes.
The act is a police regulation to maintain and keep from destruction the public highways of the community. It is a reasonable exercise of the police power of the state to require that whoever in fact operates or allows overloaded trucks on the highways should take the risk of knowing the facts. SeeMott's Super Markets, Inc. v. Frassinelli, 148 Conn. 481. In exercising police power, the legislature has a broad discretion in passing on the need and fashioning the method. The regulations imposed on a lawful business cannot exceed what is reasonably necessary to accomplish their purpose. Leach v.Florkosky, 145 Conn. 490, 495; State v. Porter,94 Conn. 639, 645.
The legislative intent is clear, and the evils to be avoided under the statute under discussion are not unreasonable. Its purpose can only be attained by construing the statute so as to hold the owner responsible. The words "allow . . . to be operated" in the statute must be construed to mean failure by the owner to use due care so as to carry into effect the purpose of the statute. *Page 490 
A claim urged by the defendant is that as a general rule a master is never criminally responsible for the acts of a servant done without the master's consent and against his expressed orders. The rule is restated in State v. Curtiss, 69 Conn. 86, 89: "`Criminal responsibility on the part of the principal, for the act of his agent or servant in the course of his employment, implies some degree of moral guilt or delinquency, manifested either by direct participation in or assent to the act, or by want of proper care and oversight, or other negligence in reference to the business which he has thus entrusted to another.'" Ordinarily, a principal is not criminally liable for the acts of his agent in which he did not participate and of which he had no knowledge, if his directions were bona fide and the employee acted beyond the scope of his employment. The state produced prima facie evidence of the operation of an overloaded truck by an employee of the accused. The burden rested upon the defendant to rebut this presumption. "So too it should be understood that merely colorable dissent, or a prohibition . . . , however publicly or frequently repeated, if not made bona fide, will not avail." State v.Lamperelli, 141 Conn. 430, 436. The court did not find that the defendant had rebutted this presumption.
The other issue raised by the defendant is whether the court on all the evidence before it could find the accused guilty as charged beyond a reasonable doubt. We are satisfied that there is ample evidence to sustain the conclusion of the trial court that the defendant is guilty of the offense charged beyond a reasonable doubt. There is no rule of law which would require the trial court to accept any or all of the testimony offered by the defendant. Clark v.Haggard, 141 Conn. 668, 674. *Page 491 
The court could place the responsibility for the overloading upon the defendant, upon all the evidence before it. Therefore, on all grounds heretofore stated, the court could properly conclude, upon all the evidence, that the defendant was guilty beyond a reasonable doubt.
 There is no error.
In this opinion CASALE and DALY, Js., concurred.