## STATE OF CONNECTICUT v. ERROL GOFFE
### (14129)

O'Connell, Foti and Healey, Js.

Argued December 1, 1995—officially released May 28, 1996

*Howard I. Gemeiner*, for the appellant (defendant).

*Denise B. Smoker,* deputy assistant state's attorney, with whom, on the brief, were *Mary M. Galvin,* state's attorney, and *L. Mark Hurley,* assistant state's attorney, for the appellee (state).

HEALEY, J. On March 14, 1994, the defendant, Errol Goffe, was issued a summons charging him with two counts of operating an overweight commercial motor vehicle, owned by him, in violation of General Statutes § 14-267a.[1] On October 3, 1994, a trial to the court was held in which an assistant state's attorney presented

[1] General Statutes § 14-267a provides in relevant part: "Weight restrictions for vehicles, trailers or other objects. Highway weighing procedure. Penalties for overweight violations. Fines for failure to comply. Regulations. (a) A vehicle or combination of vehicle and trailer or semitrailer or any other object may be operated upon any highway or bridge, subject to the provisions of section 13a-151, provided such vehicle or combination of vehicle and trailer or semitrailer or other object meets all the applicable requirements of this section or has been granted a permit under section 14-270.

"(b) The axle weight on any axle and the gross weight of any vehicle or combination of vehicle and trailer or vehicle and semitrailer or any other object, including its load, may not exceed the manufacturer's axle weight rating, the gross vehicle weight rating or the following gross weight limits: (1) A two-axle vehicle equipped with pneumatic tires, a gross weight of thirty-two thousand pounds; (2) a two-axle vehicle equipped with solid or pneumatic tires, the weight on any single axle not to exceed eighteen thousand pounds, a gross weight of thirty-six thousand pounds; (3) a three-axle vehicle equipped with pneumatic tires, the weight on any single axle not to exceed twenty-two thousand four hundred pounds or, in the case of axles spaced less than six feet apart, eighteen thousand pounds, gross vehicle weight of fifty-three thousand eight hundred pounds . . . (6) a four-or-more-axle vehicle or combination of vehicle and trailer or vehicle and semitrailer where the distance between the first and last axle is not less than twenty-eight feet, the weight on any single axle not to exceed twenty-two thousand four hundred pounds or, in the case of axles spaced less than six feet apart, eighteen thousand pounds, a gross vehicle weight of seventy-three thousand pounds; provided in no event shall the gross vehicle weight exceed seventy-three thousand pounds; (7) notwithstanding the provisions of this subsection and subsection (e) of this section, a vehicle or combination of vehicle and semitrailer equipped with pneumatic tires may be operated on any highway or bridge without a written permit, provided the weight on any single axle does not exceed twenty-two thousand four hundred pounds or, in the case of axles spaced less than six feet apart, eighteen thousand pounds, and provided such vehicle or combination is in compliance with

the state's case. The defendant appeared without counsel. At the trial, the state presented one witness, Con-

---

the federal-aid highway amendments of 1974, 88 Stat. 2281, 23 USC 101 et seq., as amended from time to time, including the gross vehicle weight limit of eighty thousand pounds and the following weight distribution formula:

$$W = 500 \left( \left( \frac{LN}{N-1} \right) + 12N + 36 \right)$$

Where W = overall gross weight on any group of two or more consecutive axles to the nearest five hundred pounds, L = distance in feet between the extreme of any group of two or more consecutive axles, and N = number of axles in group under consideration, except that two consecutive sets of tandem axles may carry a gross load of sixty-eight thousand pounds, provided the overall distance between the first and last axles of such consecutive sets of tandem axles is thirty-six feet or more.

\* \* \*

"(d) The owner of any vehicle or other object operated or moved over any highway or bridge in violation of any provision of this section shall be liable for all damages to such highway or bridge resulting from such violation and such damages may be recovered in an action at law by the authority in charge of the maintenance of such highway or bridge.

\* \* \*

"(f) (1) The penalties provided for in this subsection shall be assessed against the owner of a commercial motor vehicle when the owner, his agent or employee is the operator, or against the lessee of such vehicle when the lessee, his agent or employee is the operator of a leased or rented commercial motor vehicle.

"(2) Any person who violates any provision of this section shall be subject to the following penalties . . . (F) for an overweight violation of more than twenty-five per cent but not more than thirty per cent of either such overweight limit, a fine of twelve dollars per hundred pounds or fraction thereof of such excess weight or a minimum fine of five hundred dollars; and (G) for an overweight violation of more than thirty per cent of either such overweight limit, a fine of fifteen dollars per one hundred pounds or fraction thereof of such excess weight or a minimum fine of one thousand dollars.

\* \* \*

"(g) For the purpose of enforcing the provisions of this section, any state police officer, department of public safety employee designated by the commissioner of public safety, local police officer, motor vehicles department inspector, or state transportation department employee designated by the commissioner of transportation, may require the driver to stop and submit to a weighing by means of either portable or stationary scales and may require that such vehicle be driven to a scale or safety inspection site. . . ."

necticut State Trooper Warren Hyatt, the officer who had weighed the defendant's truck. Hyatt had been a truck enforcement officer for ten years prior to March 14, 1994. The defendant presented no evidence or witnesses nor did he cross-examine Hyatt. The defendant was found guilty on both counts and ordered to pay $11,784 in fines, court costs and fees.

The trial court could reasonably have found the following facts. In March, 1994, the defendant was the registered owner of a 1988 International dump truck. On March 14 of that year, Hyatt observed the defendant's truck near exit 43 on the southbound side of Interstate 95. The truck was loaded with gravel or fill. Hyatt noticed the truck because its load was "very high" and its "tag-axle" was raised, making it a three axle vehicle rather than a four-axle vehicle. According to Hyatt a tag-axle is an axle that can be raised or lowered with an air gauge and a lever. A truck's maximum allowable load is greater when the tag-axle is down. Conversely, when a truck's tag-axle is up, its maximum allowable weight decreases. Realizing that the truck would be "extremely heavy," Hyatt pulled the vehicle over, spoke with the driver, and escorted both driver and truck to a nearby weigh station.

At the station, Hyatt weighed the truck and two of its axles. The gross weight of the truck was 81,900 pounds, more than 28,000 pounds over the legal limit of 53,800 pounds. The axle weight was 58,240 pounds, more than 22,000 pounds over the legal limit of 36,000 pounds. Because the vehicle was more than 25 percent overweight, Hyatt ordered the driver to off-load the truck and told him that it was "grounded." The driver parked the truck outside the station and stated that he would contact the defendant. Hyatt then issued the defendant a ticket charging him with two counts of operating an overweight commercial motor vehicle in

violation of General Statutes § 14-267a.[2] At that time, Hyatt wrote the ticket for the maximum amount that could be assessed against the defendant for each violation, which he had calculated pursuant to the statutory formula.[3] See General Statutes § 14-267a (f) (2). He then gave the ticket to the defendant's driver who gave it to the defendant.

The issues presented by the defendant are being raised for the first time on appeal. Those two issues are that the trial court improperly failed (1) to apprise the defendant of his right to trial by jury and (2) to ascertain whether the defendant knowingly waived his right to counsel. Review of these claims is sought under the doctrine of *State* v. *Golding*, 213 Conn. 233, 567 A.2d 823 (1989).[4] On his jury trial claim, the defendant also invokes General Statutes § 54-82b[5] as well as Prac-

---

[2] General Statutes § 14-267a (f) (1) provides in pertinent part: "The penalties provided for in this subsection shall be assessed against the owner of a commercial motor vehicle when the owner, his agent or employee is the operator . . . ."

[3] Hyatt entered the amount of $5435 for the first count and that of $6349 for the second count for a total of $11,784.

[4] The defendant relies on both the United States and Connecticut constitutions. Yet, he offers no independent analysis of his claim under the Connecticut constitution Accordingly, we do not review his state constitutional claims. See *State* v. *Pinnock*, 220 Conn. 765, 776 n.3, 601 A.2d 521 (1992); *Phillips* v. *Warden*, 220 Conn. 112, 131 n.15, 595 A.2d 1356 (1991).

[5] General Statutes § 54-82b provides: "Right to trial by jury. (a) The party accused in a criminal action in the superior court may demand a trial by jury of issues which are triable of right by a jury. There is no right to trial by jury in criminal actions where the maximum penalty is a fine of one hundred ninety-nine dollars or in any matter involving violations payable through the centralized infractions bureau where the maximum penalty is a fine of five hundred dollars or less.

"(b) In criminal proceedings the judge shall advise the accused of his right to trial by jury at the time he is put to plea and, if the accused does not then claim a jury, his right thereto shall be deemed waived, but if a judge acting on motion made by the accused within ten days after judgment finds that such waiver was made when the accused was not fully cognizant of his rights or when, in the opinion of the judge, the proper administration of justice requires it, the judge shall vacate the judgment and cause the proceeding to be set for jury trial.

tice Book § 839, and on his waiver of the right to counsel claim he also refers to Practice Book § 961.[6]

"[A] defendant can prevail on a claim of constitutional error not preserved at trial only if *all* of the following conditions are met: (1) the record is adequate to review the alleged claim of error; (2) the claim is of constitutional magnitude alleging the violation of a fundamental right; (3) the alleged constitutional violation clearly exists and clearly deprived the defendant of a fair trial; and (4) if subject to harmless error analysis, the state has failed to demonstrate harmlessness of the alleged constitutional violation beyond a reasonable doubt. In the absence of any one of these conditions, the defendant's claim will fail. The appellate tribunal is free, therefore, to respond to the defendant's claim by focusing on whichever condition is most relevant to the particular circumstances." (Emphasis in original.) *State* v. *Golding*, supra, 213 Conn. 239–40.

The state first argues that the defendant does not have a constitutional right to a jury trial because the trial of a defendant under § 14-267a is not a criminal prosecution. It also argues that even if § 14-267a were

"(c) In any criminal trial by a jury, except as otherwise provided by law, such trial shall be by a jury of six."

[6] Practice Book § 961 provides: "[Right to Counsel]—Waiver

"A defendant shall be permitted to waive his right to counsel and shall be permitted to represent himself at any stage of the proceedings, either prior to or following the appointment of counsel. A waiver will be accepted only after the judicial authority makes a thorough inquiry and is satisfied that the defendant:

"(1) Has been clearly advised of his right to the assistance of counsel, including his right to the assignment of counsel when he is so entitled;

"(2) Possesses the intelligence and capacity to appreciate the consequences of the decision to represent himself;

"(3) Comprehends the nature of the charges and proceedings, the range of permissible punishments, and any additional facts essential to a broad understanding of the case; and

"(4) Has been made aware of the dangers and disadvantages of self-representation."

considered criminal, that alone would not entitle the defendant to a jury trial because the constitutional guarantee of the right to a jury trial does not apply to "all criminal prosecutions," noting that "so-called petty offenses may be tried without a jury." The state claims that the trial court did not commit plain error by failing to apply § 54-82b and, in any event, operating an overweight commercial motor vehicle is not a "criminal action" as that term is used in § 54-82b. Next, the state claims that the trial court was not required to advise the defendant of his right to retain private counsel or to obtain an express waiver of that right before allowing the defendant to proceed pro se because the defendant has no sixth amendment right to counsel in an action for sanctions under § 14-267a, which is not a criminal prosecution. In addition, the state claims that under the sixth amendment, advisement and waiver of the defendant's right to counsel is not required where there is no possibility that the defendant will be imprisoned.

I

We turn first to the defendant's claim that the trial court improperly failed to advise him of his constitutional right to a jury trial. Under *Golding*, the defendant here has the burden of demonstrating, inter alia, that this "alleged constitutional violation clearly exists and clearly deprived [him] of a fair trial . . . ." *State* v. *Golding*, supra, 213 Conn. 239–40. In this case the defendant has not sustained the burden of showing that he had a constitutional right to a jury trial.

The sixth amendment to the United States constitution, which is made applicable to the states through the fourteenth amendment, guarantees the right to a jury trial. That amendment provides in relevant part that "[i]n all criminal prosecutions, the accused shall enjoy the right to a speedy and public trial, by an impartial jury of the State and district wherein the crimes shall

have been committed . . . ." See *Duncan* v. *Louisiana*, 391 U.S. 145, 153–58, 88 S. Ct. 1444, 20 L. Ed. 2d 491 (1968).[7] To prevail on his claim that he had a constitutional right to a jury trial for his trial under § 14-267a, the defendant must, therefore, show that his trial was a criminal prosecution as that term is used in the federal constitution. This is so because "the protections provided by the Sixth Amendment are available only in 'criminal prosecutions.' " *United States* v. *Ward*, 448 U.S. 242, 248, 100 S. Ct. 2636, 65 L. Ed. 2d 742 (1980).

Determining whether a particular statute is criminal or civil in nature is a matter of statutory construction and a two level inquiry is utilized. Id., 248–49. Thus, the first question is whether § 14-267a is intended to be, or by its nature necessarily is, criminal and punitive, or civil and remedial. *United States* v. *One Assortment of 89 Firearms*, 465 U.S. 354, 362, 104 S. Ct. 1099, 79 L. Ed. 2d 361 (1984). In *Ward*, the court said that "[f]irst, we have set out to determine whether Congress, in establishing the penalizing mechanism, indicated either expressly or impliedly, a preference for one label or the other [civil or criminal]. . . . Second, where Congress has indicated an intention to establish a civil penalty, we have inquired further whether the statutory scheme was so punitive either in purpose or effect to negate that intention." (Citations omitted.) *United States* v. *Ward*, supra, 448 U.S. 248–49. Where the legislative intent to establish the penalty is civil and remedial, that intent will govern unless "the clearest proof" demonstrates that the sanction is punitive in purpose and effect. Id.; *In re Garay*, 89 N.J. 104, 112, 444 A.2d 1107 (1982).

The second level of inquiry is to determine whether the civil remedial mechanism of the statute "provided

[7] The sixth amendment to the United State constitution also accords to a defendant the right to a jury trial for nonpetty offenses. See *Duncan* v. *Louisiana*, supra, 391 U.S. 160–61.

for sanctions so punitive as to 'transfor[m]' what was clearly intended as a civil remedy into a criminal penalty.' " *United States* v. *Ward,* supra, 448 U.S. 249, quoting *Rex Trailer Co.* v. *United States,* 350 U.S. 148, 184, 76 S. Ct. 219, 100 L. Ed. 149 (1956).This is done by addressing the seven considerations listed in *Kennedy* v. *Mendoza-Martinez,* 372 U.S. 144, 168–69, 83 S. Ct. 554, 9 L. Ed. 2d 644 (1963), which are: "Whether the sanction involves an affirmative disability or restraint, whether it has historically been regarded as a punishment, whether it comes into play only on a finding of scienter, whether its operation will promote the traditional aims of punishment—retribution and deterrence, whether the behavior to which it applies is already a crime, whether an alternative purpose to which it may rationally be connected is assignable for it, and whether it appears excessive in relation to the alternative purpose assigned are all relevant to the inquiry, and may often point in differing directions."

In the present case, the legislature's intent that the sanction in the statute is civil may be implicit or explicit. *United States* v. *One Assortment of 89 Firearms,* supra, 465 U.S. 362, citing *United States* v. *Ward,* supra, 448 U.S. 248. There is no express label attached to § 14-267a or a statement in it that can be said to constitute an express declaration of intent. An examination of the predecessor of § 14-267a, however, " 'is worth a volume of logic,'[8] *New York Trust Co.* v. *Eisner,* 256 U.S. 345, 349, [41 S. Ct. 506, 65 L. Ed. 963 (1921)]" as the *Kennedy* court noted in its analysis. *Kennedy* v. *Martinez-Mendoza,* supra, 372 U.S. 169.

In 1921, the General Assembly enacted "An Act concerning Motor Vehicles," which was in Chapter 400 of

---

[8] Unlike the statute in *Kennedy* v. *Martinez-Mendoza,* supra, 372 U.S. 169, however, we do not have any statement of reasons for the enactment of § 14-267a, although we have some legislative history that points up concerns that contributed to its passage.

the 1921 Public Acts and § 32 of which was entitled "Operation of over-weight motor vehicle." Public Acts 1921, c. 400, § 32. That section provided the following for its violation: "Any person who shall violate the provision of this section shall be fined not more than five hundred dollars or imprisoned not more than one year or both, and upon any conviction for such violation the commissioner may in his discretion demand of the owner of such motor vehicle a bond with sufficient surety to the state in the sum of not less than five hundred dollars, which bond shall be forfeited to the state upon a second conviction for the violation of the provision of this section." In 1927, the 1921 statute was amended to apply to "any commercial motor vehicle." Public Acts 1927, c. 311, § 2. The penalty provision of the 1921 act remained the same but immediately after that penalty language the 1927 act provided the following: "The commissioner [of motor vehicles] may revoke the registration of any commercial motor vehicle so operated and may refuse to issue registration for such motor vehicle during such time as he may deem reasonable." Public Acts 1927, c. 311, § 2.

In 1953, however, the legislature made a significant determination looking to the decriminalization of this statute when it eliminated the imprisonment provision and, by its 1953 amendment, articulated a sliding scale of the fine proportionate to the severity of the over-weight. General Statutes (1953 Sup.) § 1027c; Public Acts 1953, c. 434, § 2. A later indication of the legislative intent further to decriminalize § 14-267a is found with the 1969 enactment of the Penal Code in General Statutes § 53a-27 under which the violation of § 14-267a became a "motor vehicle violation." Under § 53a-27 (a), "[a]n offense for which the only sentence authorized is a fine, is a violation unless expressly designated an infraction." Section 14-267a is not "expressly designated an infraction." Moreover, under another section

of the 1969 Penal Code, now General Statutes § 53a-24 (a),[9] a motor vehicle violation is not a crime as that term "comprises felonies or misdemeanors." A motor vehicle violation under § 53a-24 (a) is not even an "offense," which is defined as "any crime or violation which constitutes a breach of any law of this state . . . for which a sentence to a term of imprisonment or to a fine, or both, may be imposed, *except* one that defines a motor vehicle violation or is deemed to be an infraction. . . . Every offense which is not a 'crime' is a 'violation'. Conviction of a violation shall not give rise to any disability or legal disadvantage based on conviction of a criminal offense." (Emphasis added.) Not only does this language of § 53a-24 (a) further justify considering § 14-267a as intended to be civil and not criminal by its legal status as that of a "motor vehicle violation," but also the last sentence of this subsection explicitly negates the intent that any criminality be attached to a conviction of a violation of § 14-267a. The 1971 comment by the commission to revise the criminal statutes concerning § 14-267a[10] lends additional support to the

---

[9] General Statutes § 53a-24 (a) provides: "The term 'offense' means any crime or violation which constitutes a breach of any law of this state or any other state, federal law or local law or ordinance of a political subdivision of this state, for which a sentence to a term of imprisonment or to a fine, or both, may be imposed, except one that defines a motor vehicle violation or is deemed to be an infraction. The term 'crime' comprises felonies and misdemeanors. Every offense which is not a 'crime' is a 'violation'. Conviction of a violation shall not give rise to any disability or legal disadvantage based on conviction of a criminal offense."

[10] The commission comment by the commission to revise the General Statutes concerning § 53a-24 (a) further underlines the legislative intent to move away from any criminality of § 14-267a. That comment is as follows: "Subsection (a). This section defines the terms 'offense,' 'crime,' and 'violation.' 'Offense' is a general term which means a breach of state or local 'criminal' law—i.e., one that calls for imprisonment or fine for breach thereof. 'Crime' means either a felony or a misdemeanor. 'Violation,' which must be read in connection with section 53a-27, means an offense calling only for a fine for breach thereof. The concept of a 'violation,' which is taken from the Model Penal Code, is new. Section 53a-24 makes clear that conviction of a violation does not 'give rise to any disability or legal disadvantage based

claim of the state that §§ 53a-24 and 53a-27 further show the legislative intent to decriminalize § 14-267a. It is clear from what we have said that the legislative intent in § 14-267a is definitely civilly oriented with its penalty being civil. This statute, therefore, is intended by the legislature to be civil not criminal for constitutional purposes. This brings us to the second level of inquiry and that is a consideration of the *Kennedy* factors where, given the legislative intent demonstrative of their establishment of a civil penalty, "whether the statutory scheme of [§ 14-267a is] so punitive either in purpose or effect as to negate that intent." *United States* v. *Ward*, supra, 448 U.S. 248–49.

Initially, we note that the statutory sanction in § 14-267a does not involve an affirmative disability or restraint under *Kennedy*. The civil penalty itself does not provide a restraint. There is the possibility that where there has been a conviction under § 14-267a, "the commissioner [of motor vehicles] may revoke the registration, for a period of thirty days, of any commercial motor vehicle so operated and may refuse to issue a registration for such motor vehicle during such further time as the commissioner deems reasonable. . . ." General Statutes § 14-267a (f) (3). This power is de minimis in the constitutional context, as such brief period of revocation lies within the administrative ken and not the judicial. Significantly, however, on this "affirmative disability or restraint" factor is that the

---

on conviction of a criminal offense.' It is a new category of non-criminal offense; conduct which should be proscribed but conviction for which should in no way brand the offender a 'criminal.' Thus, for example, a person who has been convicted only of a violation can truthfully answer 'no' to the question: Have you ever been convicted of a crime?" Commission to Revise the Criminal Statutes, Penal Code Comments, Connecticut General Statutes, p. 8 (1971). As in construing statutory provisions in an official revision or compilation, courts have often referred to the reporter notes of the revision commission. See *State* v. *Kluttz*, 9 Conn. App. 686, 693, 521 A.2d 178 (1987); 2A J. Sutherland, Statutory Construction (5th Ed. Singer 1992) § 48.09.

"[c]onviction of a violation [which § 14-267a is] shall not give rise to any disability or legal disadvantage based on conviction of a criminal offense." General Statutes § 53a-24 (a). Next, it can reasonably be said that the penalty here is remedial and civil when the purpose of such legislation is considered. "The legislative intent of the statute . . . is to prevent the destruction of public highways in the state from overloaded vehicles." *State* v. *Salone*, 22 Conn. Sup. 482, 486, 174 A.2d 803 (1961). "The act is a police regulation to maintain and keep from destruction the public highways of the community." Id., 489; see also *Commonwealth* v. *Smith*, 409 Pa. 521, 525, 187 A.2d 267 (1963). The legislative history reveals the legislators' concern that axle overweights on vehicles would cause rapid deterioration of highway structure and damage to our highways. 27 H.R. Proc., Pt. 17, 1984 Sess., pp. 6270–82. It has been recognized that civil penalties also can compensate society at large for the harm it has suffered at the hands of violators and compensate the government for the cost of enforcing the applicable law. *Kimmelman* v. *Henkels & McCoy, Inc.*, 108 N.J. 123, 130, 527 A.2d 1368 (1987); C. Diver, "The Assessment and Mitigation of Civil Money Penalties by Federal Administrative Agencies," 79 Colum. L. Rev. 1436, 1468–69 (1979). This statute accomplishes that end.

We next consider whether the sanction is something that historically has been considered punishment. Monetary penalties have been regarded as civil, not criminal, penalties. *United States* v. *Ward*, supra, 448 U.S. 256 (Blackman, J., concurring). One court has noted that this is so because, although the payment of a fine is "surely 'punishment' of a sort, historically payment of money has been viewed as serving nonpunitive purposes." *State by Humphrey* v. *Alpine Air Products*, 500 N.W.2d 788, 792 (Minn. 1993), citing *United States* v. *Ward*, supra, 254.

Another *Kennedy* factor is the matter of whether the sanction comes into play only upon a finding of scienter. Scienter is not required under § 14-267a. The decision whether to require it is a question of legislative intent. See *State* v. *Salone*, supra, 22 Conn. Sup. 487; see also *State* v. *Kreminski*, 178 Conn. 145, 149, 422 A.2d 294 (1979). This factor also militates in favor of the noncriminal intent underlying § 14-267a.

Given the evident broad remedial purpose of the statute, we cannot say that it would impermissibly promote the traditional aims of punishment—retribution and deterrence. It can be argued that the civil penalty provision of § 14-267a, when effectively enforced, deters overweighting motor vehicles by either carelessness or design. Deterrence alone does not make the sanctions criminal, as even deterrence may be a proper purpose of a civil penalty. *United States* v. *General Motors Corp.*, 403 F. Sup. 1151, 1162 (D. Conn. 1975). More to the point, although the penalty is assessed against the owners of the overweight vehicle, its principal purpose is compensatory and remedial, as stated; albeit deterrence is involved in overall advancing of that purpose. Long ago the United States Supreme Court acknowledged the power of the state in "its ordinary police power to conserve the highways in the interest of the public and to prescribe such reasonable regulations for their use as may be wise to prevent injury and damage to them." *Morris* v. *Duby*, 274 U.S. 135, 143, 47 S. Ct. 548, 71 L. Ed. 966 (1927). In *Morris*, Chief Justice Taft also wrote: " 'With the increase in number and size of the vehicles used upon a highway, both the danger and the wear and tear grow. To exclude unnecessary vehicles—particularly the large ones commonly used by carriers for hire—promotes both safety and economy. State regulation of that character is valid even as applied to interstate commerce, in the absence of legislation by Congress which deals specifically with the subject.' "

Id., 144. Placing the well crafted sanction mechanism of § 14-267a, with its historically evolving decriminalization intent and remedial purpose in context of the *Kennedy* factors, demonstrates that it does not promote the traditional aims of punishment—retribution and deterrence.

With regard to whether the behavior to which the statute applies is already a crime, we point out that this statute with its sanction governs conduct that is not already a crime. This is the only statute that proscribes the conduct in question. Under the circumstances, this *Kennedy* factor supports the civil character of § 14-267a.

Next we go on to that factor in *Kennedy* that asks whether there is an alternative purpose to which the sanction may rationally be connected. This is a factor that must be "carefully restricted." *Atlas Roofing Co.* v. *Occupational Safety & Health Review Commission*, 518 F.2d 990, 1010 (5th Cir. 1975). *Atlas Roofing Co.*, in that regard, appropriately states that "[u]nless caution is exercised, it puts the judiciary squarely in the middle of choices as to the kinds of remedies open and those most likely to achieve the legislative aim." Id. Given the overriding purpose of § 14-267a, it is arguable that the civil penalty has an effect akin to deterrence, but, we submit, this effect is an unavoidable by-product of the legislative purpose. See *United States* v. *General Motors Corp.*, supra, 403 F. Sup. 1163. By this statute, our legislature intended to regulate reasonably the problem caused by overweight vehicles. Such regulation was its decision to make and resulted in the remedial civil penalty structure. The legislature is better able than the courts to decide and enact into law the best methods to attain its purposes. As one court said on this *Kennedy* factor, "[t]he Court cannot substitute its own judgment for the informed choice of the [legislature] by interpreting this by-product to be the primary purpose of the

statute." Id. This factor alone may minimally affect the civil character of the sanction, but certainly does not seriously do so in a balanced consideration of all the *Kennedy* factors.

Finally, the court, under *Kennedy*, is to examine whether the sanction appears excessive in relation to the alternative purpose assigned. We believe that, given the basic remedial purpose of § 14-267a and its structure, the civil sanction prescribed by it does not result in the excessive fines. Earlier we have discussed the focus of its attempt to prevent the deterioration of our highways from overweight vehicles and to make highways safe for the public. This, of course, involves a compensatory component in the graduated fine structure of § 14-267a. Enforcing this statute involves the expenditure of moneys by the state including the purchase and maintenance of stationary and portable scales, the staff to operate the scales and the costs of investigation and litigation to implement the overweight vehicle statutory scheme. The remedial civil mechanism in the fine structure of § 14-267a, on balance, permissibly implements the statutory purpose. The elimination of the fixed fine of $500 by the legislature in 1953 and its replacement with a scale of graduated fines advances that legislative purpose. Persons who own or operate vehicles amenable to greater overweight potential are chargeable with the knowledge of the graduated fine structure. The graduated scale of fines is not irrational or unreasonable, keeping in mind the object to be accomplished and the importance and magnitude of the public interest sought to be protected. The fine in the present case was fixed and based on the statute and is not excessive.[11]

---

[11] As to the two counts of the defendant's violation of § 14-267a, the state points out that for the gross weight violation, Hyatt calculated a maximum fine of $4215 and fees of $2634 and for the axle weight violation, he calculated a maximum fine of $3345 and fees of $2000. The fees were assessed pursuant to General Statutes § 13b-70 which directs that a surcharge of 50 percent

We conclude that the statutory scheme was not so punitive in either purpose or effect as to negate that legislative intention. Therefore, the trial of the defendant under § 14-267a was not a "criminal prosecution" as that term is used in the sixth amendment of the federal constitution. The defendant is, therefore, not entitled to a jury trial under the federal constitution as claimed.

## II

Next, we examine the defendant's claims under General Statutes § 54-82b and Practice Book § 839.[12] He advances these as bases for his right to trial by jury claim as well as for his claims that the trial court should have apprised him of his jury trial right and his right to counsel and determined whether he made a valid waiver of those rights.[13] The state has several responses

of the fine be paid to the special transportation fund and pursuant to General Statutes § 51-56a (c) which directs the payment of an additional fee of $1 for every $8 of the fine for the provision of additional funds for municipal and state police training. These fees so directed to be paid pursuant to §§ 13b-70 and 51-56a (c) are required to be so paid for a number of other statutory violations.

[12] Practice Book § 839 provides in relevant part: "[Jury Trials]—Right to Jury Trial and Waiver

"The defendant in a criminal action may demand a trial by jury of issues which are triable of right by jury. If at the time he is put to plea, he or she elects a trial by the court, the judicial authority shall advise the defendant of his or her right to a trial by jury . . . . If the defendant does not then elect a jury trial, the defendant's right thereto may be deemed to have been waived."

[13] Here, counsel refers to Practice Book § 961 which provides: "[Right to Counsel]—Waiver

"A defendant shall be permitted to waive his right to counsel and shall be permitted to represent himself at any stage of the proceedings, either prior to or following the appointment of counsel. A waiver will be accepted only after the judicial authority makes a thorough inquiry and is satisfied that the defendant:

"(1) Has been clearly advised of his right to the assistance of counsel, including his right to the assignment of counsel when he is so entitled;

"(2) Possesses the intelligence and capacity to appreciate the consequences of the decision to represent himself;

to these claims, which we discuss in two parts. First, the state maintains, as to the defendant's jury trial claim under § 14-267a, that he is not entitled to a trial by jury because that statute is not a "criminal action" as that term is used in § 54-82b, that the trial court did not commit plain error in not applying § 54-82b,[14] and that the trial court's failure to apply an ambiguous statute is not plain error. Second, as to the trial court's claimed failure to advise the defendant of his right to counsel and obtaining a valid waiver of that claimed right before proceeding, the state makes two responses. One, the defendant has no sixth amendment right to counsel and, two, under the sixth amendment, advisement and waiver of the defendant's right to counsel is not required where there is no possibility that the defendant will be imprisoned.

In discussing the § 54-82b issue, as well as that under Practice Book § 839, the defendant refers to the rights of a "criminal defendant."[15] We have already determined in part I of this opinion that this defendant, charged with and found guilty of § 14-267a, was not a defendant in a "criminal prosecution" and was, therefore, not a criminal defendant. In any event, the state, at great length in its brief, argues that for § 54-82b to apply, § 14-267a must be a "criminal action" as that term is used in § 54-82b. It maintains that for the defendant to prevail on his § 54-82b claim, the term "criminal action"

"(3) Comprehends the nature of the charges and proceedings, the range of permissible punishments, and any additional facts essential to a broad understanding of the case; and

"(4) Has been made aware of the dangers and disadvantages of self-representation."

[14] The state's claim here is that "unlike the defendant's constitutional claim . . . his statutory claim is not reviewable under *Golding* because it is not of constitutional magnitude, alleging the violation of a fundamental right." See *State* v. *Golding*, supra, 213 Conn. 239–40.

[15] We note that Practice Book § 839 also sets out the rights of the defendant in a criminal action as to a jury trial.

in that statute "must be read to include violations not punishable by imprisonment and not payable to the centralized infractions bureau." In addition, the state, acknowledging that it is "plain error" for a court not to apply "a clearly relevant statute to the case before it"; *State* v. *Hinckley*, 198 Conn. 77, 88, 502 A.2d 388 (1985); maintains that § 54-82b was not applicable to this case. We agree.

As we have already determined, § 14-267a is a civil and thus a noncriminal statute, prosecution under which was not a "criminal prosecution" under the sixth amendment to the United States constitution, and it did not involve the charging of a "crime" as that term is defined in § 53a-24 (a) of our penal code. Under § 53a-24 (a) a "*crime comprises felonies and misdemeanors.*" The meaning of the term "violation" is illuminated by the 1971 commission comment to § 53a-24. See footnote 10.

Our Supreme Court has said that "[w]e do not mechanistically apply penal code definitions to a statute but interpret the language in a manner that implements the statute's purpose." *State* v. *Harrison*, 228 Conn. 758, 763, 638 A.2d 601 (1994). Moreover, we have not overlooked those cases that indicate that "what may or may not be a criminal offense for purposes of a particular statutory categorization is not necessarily determinative of whether it is a criminal offense for [other] purposes"; *State* v. *Kluttz*, 9 Conn. App. 686, 699, 521 A.2d 178 (1987); in the fine only statutory context of § 14-267a as we have analyzed it. *State* v. *Harrison*, supra, 228 Conn. 763; *State* v. *Guckian*, 226 Conn. 191, 198, 627 A.2d 407 (1993); *State* v. *Kluttz*, supra, 698–700. We, therefore, see no reason, nor has any been offered to us, why this "concept of violation," which is "a new category of noncriminal offense," is to be construed as other than that in our assessing § 14-267a vis-a-vis § 54-82b. This is especially so where, as we have earlier

pointed out, the demonstrated legislative history and purpose do not fairly suggest otherwise, and the mischief sought to be proscribed by § 14-267a is apparent. See *Singh* v. *Singh*, 213 Conn. 637, 647, 569 A.2d 1112 (1990); *Lee* v. *Lee*, 145 Conn. 355, 358, 143 A.2d 154 (1958).

We also believe that, given our earlier determination that § 14-267a is not a criminal statute, it cannot be the basis of a "criminal action" as that term is used in § 54-82b, acknowledging that "criminal action" is not defined in that statute. Black defines the term "criminal action" as meaning a "[p]roceeding by which person charged with a crime is brought to trial, and either found not guilty or guilty and sentenced. . . ." Black's Law Dictionary (6th Ed. 1990). Our view of the terms "criminal prosecution" and "criminal action" is in harmony with the demonstrated legislative purpose of § 14-267a and does not impinge on any of the defendant's claimed constitutional rights.

Other provisions of § 54-82b (a) do not avail the defendant's claim. We draw attention to that language of § 54-82b (a) that provides: "There is no right to trial by jury in criminal actions where the maximum penalty is a fine of one hundred ninety-nine dollars *or* in any matter involving violations payable through the centralized infractions bureau where the maximum penalty is a fine of five hundred dollars or less." (Emphasis added.) Our previous conclusion that this § 14-267a action was not a "criminal action" disposes of the defendant's claims. We detect nothing that suggests that "criminal action" in § 54-82b (a) does not mean the same as "criminal prosecution" under the sixth amendment to the federal constitution.

We agree with the state that to accept the defendant's claim would involve an extension of the jury trial right

not intended by the legislature.[16] For us to accept his claim, we would have to read "criminal action" in § 54-82b (a) to include violations not punishable by incarceration but punishable by a fine paid to the centralized infractions bureau. We find no such indication that the legislature intended the term "criminal action" in § 54-82b to include "violations" not punishable by incarceration but punishable by a fine paid to the centralized infractions bureau, nor does the defendant advance any such analysis. It is not our function to interpret this statute so as to constitute an expansion of the jury trial right that the legislature did not intend in § 54-82b. In conclusion, on this branch of the matter, the defendant was not entitled to a jury trial under § 54-82b and the trial court was not required to tell him of such a "right" in this case. He, therefore, had no sixth amendment right to counsel and the trial court was not required to advise him that he did. Accordingly, we need not reach the issue of a valid waiver as claimed by the defendant. Practice Book § 961.

We agree with the state that under the sixth amendment neither the claimed advisement nor the waiver of the defendant's right to counsel is required where there is, as in this case, no possibility that the defendant will be imprisoned. Here, the state argues that even if § 14-267a were considered criminal, the sixth amendment does not require that the defendant be advised of his right to counsel or that he must expressly waive that right before proceeding pro se. We agree.

In *Argersinger* v. *Hamlin*, 407 U.S. 25, 37, 92 S. Ct. 2006, 32 L. Ed. 2d 530 (1972), the United States Supreme Court held that "absent a knowing and intelligent waiver, no person may be imprisoned for any offense,

---

[16] Because we decide that the defendant was not entitled to a jury trial, we need not discuss Practice Book § 839 entitled "Right to Jury Trial and Waiver."

whether classified as petty, misdemeanor or felony, unless he was represented by counsel at his trial." Under our analysis, the trial court did not have to reach either the advisement issue or the waiver issue because operating an overweight motor vehicle under § 14-267a was not one of the criminal classifications set out in *Argersinger* and it was not a "criminal prosecution" or a "criminal action."

In considering this aspect of the case, it is crucial to note the posture as well as the stage of this matter in which it comes to us. The defendant has been found guilty of the violation of §14-267a and a fine has been imposed in accordance with that statute. Section 14-267a is not a "crime" nor is it a nonpetty offense that would afford the entitlement of a jury trial. It is a "motor vehicle violation." The question of indigency was not raised in the trial court. We are mindful that imprisonment of a person for the nonpayment of a fine,[17] solely because of his indigency, would violate his rights of due process and equal protection. See *Bearden* v. *Georgia*, 461 U.S. 660, 103 S. Ct. 2064, 76 L. Ed. 2d 221 (1983); *Tate* v. *Short*, 401 U.S. 395, 91 S. Ct. 668, 28 L. Ed. 2d 130 (1971); *Morris* v. *Schoonfield*, 399 U.S. 508, 90 S. Ct. 2232, 26 L. Ed. 2d 773 (1970); *Williams* v. *Illinois*, 399 U.S. 235, 90 S. Ct. 2018, 26 L. Ed. 2d 586 (1970). We are not, however, on this record, dealing with an indigent or a person who is imprisoned. More to the point, we are not dealing with a defendant fined pursuant to a criminal statute. In this context, a state cannot convert a fine imposed under a fine only statute into a jail term solely because the defendant is indigent and cannot immediately pay the fine in full. *People* v. *Mem-*

---

[17] "The state properly concedes here that the fines assessed against the defendant on the two separate counts must be aggregated because both charges arose from the same act, transaction or occurrence." *United States* v. *Coppins*, 953 F.2d 86, 90 (4th Cir. 1991). The state maintains that the fine here is $7560 and does not add in as part of the fine the surcharges fees required by statute, i.e., §§ 13b-70, 51-56a, which themselves total $4634.

*minger,* 121 Misc. 2d 953, 954–55, 469 N.Y.S.2d 323 (1983), citing *Tate* v. *Short,* supra, 395. *Tate* made it clear that the holding in that case "does not suggest any constitutional infirmity in imprisonment of a defendant with the means to pay a fine who refuses or neglects to do so." *Tate* v. *Short,* supra, 400.

In the case before us, the judgment of guilty by the trial court resulted in the imposition of the fine. A fine was the only sanction permitted to be imposed by the court under § 14-267a for its violation, and it was from that judgment that this appeal was taken. Imprisonment was not provided for under § 14-267a. What may occur in any subsequent proceeding is not the subject of this present appeal.

The judgment is affirmed.

In this opinion the other judges concurred.