**UNITED STATES of America, Plaintiff-Appellee,**

v.

**Gary Lee HAMILTON, Defendant-Appellant.**

**No. 82–1189.**

United States Court of Appeals, Fifth Circuit.

Dec. 9, 1982.

Victor K. Sizemore, Mary Lane Broaddus, El Paso, Tex., for defendant-appellant.

Sidney Powell, Asst. U.S. Atty., San Antonio, Tex., for plaintiff-appellee.

Before BROWN, GEE and JOLLY, Circuit Judges.

PER CURIAM:

Appellant Hamilton, the record demonstrates, engaged in a lengthy and intensive fraud on his employer by selling merchandise to a friend at half price, the payment checks being made out to Hamilton. There can be no doubt whatever, on this record, that Hamilton has violated the criminal laws and egregiously cheated his employer. The proof that he committed the specific crime of which he was convicted, however, is called in question in this appeal; and a careful study of the record has been required in order to pass on that contention.

## THE FACTS

In 1977, Hamilton was a branch manager of Vinton Pipe and Steel Co. ("Vinton"), maintaining offices in Clovis, New Mexico. Vinton was a wholly-owned subsidiary of Dorsar Industries ("Dorsar"), being a part or division of El Paso Pipe and Steel Co., a New Mexico corporation wholly owned by Dorsar. The home office of Dorsar and Vinton is located in El Paso, Texas.

One Jerome, a friend of appellant Hamilton, operated a rendering business in Clovis. In 1979, at a time when Jerome was building a rendering plant requiring large amounts of steel, Hamilton approached him

with an offer to supply steel at half price in exchange for checks made out, not to Vinton Pipe, but to Hamilton personally—an arrangement referred to by them as a "two-fer." A series of transactions followed between the two, eventuating in losses to Hamilton's employer of over one hundred thousand dollars. In one instance revealed by the record Hamilton requested and received a $900 gold bracelet from Jerome, Jerome receiving in return $1800 worth of steel. For his part, Jerome falsely carried the payments on his books as raw material purchased for his rendering operation, an expense directly deductible for income tax purposes. Purchase orders for the steel were entered in a computer at Clovis, electronically transmitted across state lines to El Paso, and invoiced to Jerome.

In October 1979, Ms. Standifer, the office manager, called Jerome because his account was overdue. Jerome told her that Hamilton knew about it and that he (Jerome) was due certain credits. Ms. Standifer inquired of Hamilton about this, and he canvassed a computer printout of old invoices and checked off certain invoices, instructing Ms. Standifer to issue credits for those invoices although the invoiced merchandise had not been returned. The credits were transmitted from Clovis to El Paso in the same manner as the invoices. In early 1980, Ms. Standifer went to Valley Rendering to collect a check, and Jerome explained to her the "two-fer" arrangement.

Appellant Hamilton left Vinton in May 1981. An inventory taken the next month showed a $109,000 shortage. That August, Jerome told Hamilton that the FBI had obtained copies of the checks. Appellant told him to say that the checks were merely personal loans, which he did.

Hamilton was subsequently indicted for wire fraud for transmitting the false credits to Jerome's account and for theft of an interstate steel shipment. At trial, the district court granted a motion for acquittal on the theft count at the close of the Government's case; Appellant, convicted of the wire fraud count, appeals.

## JOINDER AND SEVERANCE

Hamilton's first claim for reversal is that the two counts should not have been tried together since evidence admitted on the theft count prejudiced his defense against the wire fraud charges. Although the primary thrust of Hamilton's argument is that his motion for severance of the counts was improperly denied, he also argues that initial joinder of the two counts was improper under Rule 8, Federal Rules of Criminal Procedure. Misjoinder under Rule 8 is matter of law completely reviewable on appeal; however, the terms of the Rule are to be broadly construed in favor of initial joinder. *United States v. Park,* 531 F.2d 754 (5th Cir.1976). The trial judge's decision to join the wire fraud and interstate theft counts seems clearly proper under Rule 8, which provides that two or more offenses may be joined if they are based on "two or more acts or transactions connected together or constituting parts of a common scheme or plan." These were both and joinder was proper.

Even so, we must also determine whether there was sufficient potential for prejudice to have required a severance under Rule 14, Federal Rules of Criminal Procedure. In ruling on such a motion, the district court must weigh the likelihood of prejudice against the court's interest in judicial economy. *United States v. Scott,* 659 F.2d 585, 589 (5th Cir.1981). The district court's decision is reviewable only for abuse of discretion. *Id.* "In order to demonstrate abuse of discretion, the defendant bears a heavy burden of showing 'specific and compelling' prejudice." *Id. quoting United States v. Morris,* 647 F.2d 568, 570 (5th Cir.1981). Although some courts have more strictly scrutinized the denial of a motion to sever in cases in which trial of one of the counts has resulted in acquittal, *see e.g. United States v. Ragghianti,* 527 F.2d 586 (9th Cir.1975), we do not think that Hamilton has shown sufficient incremental prejudice in this case to justify reversal on this ground. The record is replete with evidence of fraud on both charges arising out of his scheme, and evidence relating to the

interstate theft count would doubtless have been admissible in a separate trial of the wire fraud charges to show the requisite scheme to defraud. Since this is so, no significant prejudice can have resulted from denial of the motion to sever. *United States v. Scott, supra; United States v. Park, supra.*

### SUFFICIENCY OF THE EVIDENCE

Hamilton contests the sufficiency of the evidence to support his conviction on the wire fraud count:

That on or about October 26, 1979, up to and including February, 1981, Defendant, GARY LEE HAMILTON agreed with Richard Paul Jerome to defraud El Paso Pipe and Steel, a division of Dorsar Industries, by causing to be transmitted by wire certain false credits to the account of Mr. Jerome from Clovis, New Mexico, to El Paso, Texas, and in return, Mr. Jerome paid GARY LEE HAMILTON certain amounts of U.S. currency in violation of Title 18, United States Code, Section 1343.

Hamilton asserts that the evidence of direct payments made to him in specific exchange for *credits* is meager, and in this he is correct. The investigating FBI agent did, however, testify as follows:

Q. Did Mr. Jerome indicate anything about any type of irregularities as far as the normal conduct of business other than what the alleged two-fer type situation was?

A. Yes. He mentioned that on more than one occasion, Mr. Hamilton told him that he would arrange to have credit memos sent down to the El Paso Headquarters where they do the billing on the statements and that he could arrange to have credit memos put against Mr. Jerome's statements reflecting that Mr. Jerome had returned steel items, and that way Mr. Jerome would pay less, or have a certain amount deducted from his bill.

In those cases, Mr. Jerome would pay him on the two-fer scheme also. For instance, if Mr. Hamilton arranged to have credit memos sent down to El Paso in the amount of $2,000, for instance, being reduced from Mr. Jerome's bill, then Mr. Jerome in turn would give Mr. Hamilton $1,000, another part of the two-fer scheme.

Whether or not the above second-hand admission might properly have come in under an exception to the hearsay rule we shall never know, since no objection was levelled at it. This being so, it is settled law in our circuit that "[w]here there is no objection to hearsay the jury may consider it for whatever value it may have." *United States v. Pearson,* 508 F.2d 595, 596 (5th Cir.), *cert. denied,* 423 U.S. 845, 96 S.Ct. 82, 46 L.Ed.2d 66 (1975), and pre-Rule cases there cited. Considered not as hearsay but as a direct admission by Jerome, a coconspirator, that he paid cash for credits just as he did for steel under the "two-fer" arrangement, the jury might reasonably have believed that it had great probative value, value just short of an admission by appellant Hamilton himself.

We note, moreover, that the record evidence is clearly subject to a reasonable interpretation by the jury that Jerome made his continuing payments to Hamilton not only in consideration of being furnished cut-rate steel, but for Hamilton's efforts at covering up the fraud by granting him credits and by other means indicated by the record, such as reclassifying first-rate steel as scrap, saleable at lower prices. Certainly on such an interpretation and in the absence of a claim of variance not made here, the evidence—viewed most favorably to the verdict, *Glasser v. United States,* 315 U.S. 60, 62 S.Ct. 457, 86 L.Ed. 680 (1942)—was sufficient to support the conviction.

It is

AFFIRMED.