STATE of South Dakota, Plaintiff and Appellee,

v.

Kelly W. DIXON, Defendant and Appellant.

No. 15691.

Supreme Court of South Dakota.

Considered on Briefs Nov. 16, 1987.

Decided Feb. 17, 1988.

Richard D. Coit, Asst. Atty. Gen., Pierre, for plaintiff and appellee; Roger A. Tellinghuisen, Atty. Gen., Pierre, on the brief.

Thomas M. Issenhuth of Arneson, Issenhuth and Gienapp, Madison, for defendant and appellant.

SABERS, Justice.

Kelly Wayne Dixon (Dixon) appeals his conviction on two counts of third-degree burglary, two counts of contributing to the delinquency of a minor, one count of first-degree petty theft, and one count of first-degree intentional damage to property.

*Facts*

Dixon was eighteen years old at the time of these offenses. As a result of family problems, he had been living with friends and relatives in Madison, South Dakota. At the time of these burglaries he was living with the family of the juvenile involved.

Dixon was accused of entering the Starflight Video Arcade on October 1, 1986 with a fourteen-year-old juvenile. The juvenile had a key to the business next door, which was owned by the juvenile's father. Dixon and the juvenile used the key to enter the building at approximately 1:00 a.m. They crawled over a dividing gate between the businesses into the video arcade, which was owned by the juvenile's uncle, where they took approximately $155. Dixon was in need of money to pay court-ordered restitution resulting from a fight and a traffic accident. Dixon testified the juvenile initiated the break-in to get money to buy an expensive coat.

Dixon and the juvenile broke into the video arcade again on October 15, 1986 at approximately 1:30 a.m. Unable to find cash, they took some candy bars.

On October 19, 1986 at approximately 12:00 to 12:30 a.m., a windshield was broken and the tires were slashed on vehicles owned by Dan Barker, the Athletic Director and Assistant Principal at Madison High School. Tires were also slashed on another vehicle in the same vicinity. Subsequent statements by the juvenile implicated Dixon in these crimes. Dixon denied any involvement, but there was testimony that he was angry at Barker because Barker warned other students that Dixon was a bad influence. The juvenile claimed Dixon slashed the tires on the third vehicle because Dixon simply did not like the owner.

On November 5, 1986, Dixon was indicted by the Grand Jury on seven counts:

    I.—3rd Degree Burglary; on or about Oct. 1, 1986

    II.—3rd Degree Burglary; on or about Oct. 15, 1986

III.—1st Degree Petty Theft; on or about Oct. 1, 1986

IV.—Contributing to the Deliquency of a minor; on or about Oct. 1, 1986

V.—Contributing to the Delinquency of a minor; on or about Oct. 15, 1986

VI.—Intentional Damage to Property, First Degree; on or about Oct. 19, 1986

VII.—Intentional Damage to Property; Second Degree; on or about Oct. 19, 1986.

Although Dixon signed statements indicating his involvement in the activities leading to his indictment on Counts I through V, he pled not guilty to all charges. Dixon was tried and convicted on Counts I through VI on January 23, 1987.

## 1. DENIAL OF MISTRIAL MOTION BASED ON VIOLATION OF AN ORDER OF SEQUESTRATION OF STATE'S WITNESSES

The trial court granted Dixon's pretrial motion to sequester the State's witnesses and ordered that all witnesses should wait in the same room prior to testifying, but after testifying they would be kept apart from those who had not yet testified.

During the first day of the trial, counsel for Dixon saw one of the investigating police officers, Dover, and the juvenile, both of whom had already testified, talking to other State witnesses. Dixon moved for a mistrial. The trial court found that the sequestration order had been violated but denied the motion because there was no indication that Dixon had been prejudiced.

The trial court did not interview any of the witnesses concerning the incident. However, the prosecutor talked to the juvenile who claimed he had not discussed his testimony with any of the other witnesses. In addition, Officer Dover's testimony concerned Counts I through V, while the testimony of the remaining witnesses was related to Count VI. In denying the motion, the trial court indicated that a mistrial would be possible if it later appeared that the witnesses improperly shaped or colored their testimony.

■ Initially, we note that Dixon has failed to cite any authority for his argument that the trial court improperly denied the motion for a mistrial. " 'The failure to cite supporting authority is a violation of SDCL 15–26A–60(6) and the issue is thereby deemed waived.' (citations omitted)" *Corbly v. Matheson*, 335 N.W.2d 347, 348 (S.D.1983). *See also Kostel Funeral Home, Inc. v. Duke Tufty Co.*, 393 N.W.2d 449 (S.D.1986).

■ Even if this issue were properly before us, we would not find on the merits that the denial of the motion was error. Whether a mistrial should be granted where the court's sequestration order is violated is within the discretion of the trial court. *State v. Walker*, 19 Wash.App. 881, 578 P.2d 83 (1978); *Cruz v. People*, 149 Colo. 187, 368 P.2d 774 (1962). To find an abuse of discretion by the trial court in denying a mistrial where a sequestration order was violated, it must be shown that the denial prejudiced the defendant's rights. *United States v. Strauss*, 473 F.2d 1262 (3rd Cir.1973). "Prejudice is established where the witness' testimony has changed or been influenced by what he heard from other witnesses." *State v. Swillie*, 218 Neb. 551, 553, 357 N.W.2d 212, 215 (1984). As indicated above, the trial court noted that if it later appeared that witness testimony had been influenced by any conversations in violation of the order, a mistrial might be ordered. Dixon failed to establish that his rights were prejudiced and we find no error in the trial court's ruling to that effect.

## 2. DENIAL OF MOTION TO SEVER THE CHARGES

On the Tuesday before the Thursday trial date, Dixon's counsel indicated to the trial court by telephone that he desired to make a motion to sever. The trial court was unable to hold a hearing on the record at that time. On the morning of the trial Dixon's counsel made a motion to sever the multiple counts in the indictment. Initially, the trial court stated that it did not believe that the motion was timely. The motion

was made orally to the court and then denied by the trial court.

SDCL 23A-8-3 states:

Any defense, objection or request which is capable of determination without the trial of the general issue may be raised before trial by motion. Motions may be written or oral at the discretion of the judge. The following must be raised prior to trial:

.    .    .    .    .

(6) Requests for a severance of charges or defendants under § 23A-11-2.

The language of the statute is broad. Dixon did alert the trial court of his desire to move for severance two days before trial. The court allowed Dixon to make the motion pretrial and orally. It would appear that the motion was timely made, or that its untimeliness was excused.

The standard for review on appeal is whether the trial court abused its discretion in denying the motion for severance. *State v. Closs*, 366 N.W.2d 138 (S.D.1985); *State v. Van Beek*, 88 S.D. 154, 216 N.W. 2d 561 (1974), *overruled on other grounds*, 273 N.W.2d 716, 722 (S.D.1978).

Dixon cites to SDCL 23A-6-23 (Rule 8(a)) in support of his contention that severance should have been granted.

SDCL 23A-6-23 provides:

Two or more offenses may be charged in the same indictment or information in separate counts for each offense, if the offenses charged, whether felonies or misdemeanors or both, are of the same or similar character or are based on the same act or transaction or on two or more acts or transactions connected together or constituting parts of a common scheme or plan.

SDCL 23A-6-23 sets out three grounds upon which joinder of offenses against a single defendant may be allowed. If none of the tests are met, SDCL 23A-11-2 (Rule 14) provides relief from prejudicial joinder by allowing the severance of offenses.

■ The first test allows joinder if the offenses charged are of the same or similar character. Dixon was charged with bur-glary, contributing to the delinquency of a minor, petty theft, and intentional damage to property. Although this test has been broadly construed, all of these offenses do not appear to be of the same or similar character.

■ The second test allows joinder if the offenses are based on the same act or transaction, and the third test allows it if based upon "two or more acts or transactions connected together or constituting parts of a common scheme or plan." All the charges relating to the burglaries committed on October 1 and October 15 would pass the second and third test but it is difficult to see how the intentional damages charges, allegedly committed on October 19th, have any connection to the other charges. Other than the facts that the October 19th charges occurred in the same community within the same month as the other offenses, and that the juvenile was to be a State's witness on all the charges, there is no connection between these charges. Nevertheless, a trend is developing that "the most important consideration is whether evidence of one offense would have been admissible at a trial of the other offense, ..." 1 Wright, Federal Practice and Procedure, *Joinder of Offenses & Defendants* § 143 (1982); *State v. Hoffman*, 106 Wis.2d 185, 316 N.W.2d 143 (1982); *State v. Hall*, 103 Wis.2d 125, 307 N.W.2d 289 (1981); *State v. McGuire*, 218 Neb. 511, 357 N.W.2d 192 (1984). It seems unlikely that evidence relating to the intentional damage to property charges would have been admissible at a separate trial for the other offenses or vice versa.

■ Regardless of the tests utilized in other jurisdictions, we have interpreted the statutes to mean that the decision not to sever is firmly within the discretion of the trial court and absent a clear showing of prejudice to substantial rights of the defendant, there is no abuse of that discretion. *Van Beek, supra; Closs, supra; State v. Layton*, 337 N.W.2d 809 (S.D. 1983); *State v. Maves*, 358 N.W.2d 805 (S.D.1984).

In discussing the amount of prejudice sufficient to require severance of offenses, the court in *Hoffman, supra* noted:

'Any joinder of offenses is apt to involve some element of prejudice to the defendant, since a jury is likely to feel that a [defendant] charged with several crimes must be a bad individual who has done something wrong. However, if the notion of involuntary joinder is to retain any validity, a higher degree of prejudice, or certainty of prejudice, must be shown before relief will be in order.' [citation omitted]

316 N.W.2d at 157.

Dixon argues that the reading and trial of all seven counts to the jury resulted in reversible prejudice. As mentioned above, some prejudice to the defendant is likely to occur when he is charged with multiple crimes. However, this must be balanced with judicial efficiency which is the purpose of the joinder statute. *Layton, supra; Closs, supra.* Dixon also argues that he was unable to adequately prepare a defense to all of these charges at the same time.

The certainty of prejudice here is that Dixon essentially admitted counts I through V and denied any involvement in counts VI and VII. Additional prejudice against Dixon and in favor of the juvenile's testimony would exist on counts VI and VII when charged jointly with the other five counts. The chance of getting a fair trial on these counts is slim under these circumstances. We do not overlook the fact of acquittal on Count VII but are not persuaded by it either. The testimony of the two prosecution witnesses on Count VII was extremely inconsistent. The evidence was so poor even an otherwise unfair trial could produce a fair result of acquittal. This does not eliminate the prejudice with respect to Count VI. In this case, we are convinced that the original joinder of charges was improper under SDCL 23A–6–23 and that the denial of the motion to sever prejudiced Dixon's substantial rights.

We have reviewed Dixon's final claim concerning improper indictment and conclude that it is without merit.

We reverse and remand for retrials on severed charges on the second issue.

MORGAN, J., concurs.

HENDERSON, J., concurs with writing.

MILLER, J., concurs in part and dissents in part.

WUEST, C.J., dissents.

HENDERSON, Justice (concurring).

In concurring with this opinion, I maintain my spiritual and conceptual base of past writings in this Court, to include a recent one, *State v. Breed,* 399 N.W.2d 311, 315 (S.D.1987) (Henderson, J., concurring specially), said concurrence specifically relating to SDCL 23A–6–23, the statute herein to be interpreted.

MILLER, Justice (concurring in part and dissenting in part).

I concur in the majority's disposition of the first issue. Although I agree with the majority's legal analysis under Issue 2, I dissent because I believe it misapplies the law to these facts.

Clearly, the standard of review is whether the trial court abused its discretion in denying the severance motion. *State v. Closs,* 366 N.W.2d 138 (S.D.1985); *State v. Van Beek,* 88 S.D. 154, 216 N.W.2d 561 (1974) *overruled on other grounds State v. Kaseman,* 273 N.W.2d 716 (S.D.1978). The burden is on Dixon "to present facts demonstrating that prejudice resulted from the trial of several offenses and denied him fair trial." *Pote v. State,* 695 P.2d 617, 624 (Wyo.1985); *see also United States v. Hamilton,* 694 F.2d 398 (5th Cir.1982); *State v. Hoffman,* 106 Wis.2d 185, 316 N.W.2d 143 (1982).

The majority concludes that the facts presented here establish that prejudice resulted. I disagree.

Although it would have us believe that the "chance of getting a fair trial" on both Counts VI and VII "is slim," the majority seems to minimize and discount the acquittal by the jury on Count VII. Does not the

acquittal manifestly establish that Dixon had a fair trial on Count VII, and totally erode the majority's suggestion that his chances of a fair trial were "slim"? Would the majority have us believe that Dixon had an "unfair" trial on Count VII, but a "fair" result?

The trial court properly admonished the jury through its Instruction 6 that:

A separate offense is charged in each of the counts of the Indictment. You must separately consider each count and the evidence which applies to it. The fact that you may find the Defendant guilty or not guilty on any one count of the Indictment must not control or influence your verdict on any other count or counts of the Indictment.

The jury, as honest citizens and sensible men and women, fulfilled their duty and conscientiously considered each count separately. They convicted him for the offenses he committed and acquitted him on the offense he did not commit. The majority does not suggest that the evidence was not sufficient to establish his guilt on Counts I—VI.

In my view, on the face of the record, it is clear that no prejudice resulted. I would affirm.

WUEST, Chief Justice (dissenting).

In my opinion, the trial court erred when it did not sever Counts VI and VII. However, the error was harmless. Defendant was entitled to a fair trial, not a perfect one. I would affirm.