2002 SD 161

**STATE of South Dakota, Plaintiff and Appellee,**

v.

**Daniel Arthur GEISE, David Lee Clausen, and Roland J. Clausen, Defendants and Appellants.**

No. 22368.

Supreme Court of South Dakota.

Considered on Briefs Nov. 18, 2002.

Decided Dec. 23, 2002.

Mark Barnett, Attorney General, Jason A. Glodt, Assistant Attorney General, Pierre, Attorneys for plaintiff and appellee.

Ronald G. Schmidt, Rapid City, Attorney for defendants and appellants.

KONENKAMP, Justice.

[¶ 1.] Daniel Geise, Roland Clausen and David Clausen were convicted of violating South Dakota's motor vehicle overweight statutes and were assessed civil penalties. They appeal on multiple issues, challenging the constitutionality and applicability of the provisions of SDCL ch. 32–22. We affirm.

## Background

[¶ 2.] On December 28, 1999, Clausen Construction was returning three Caterpillar Model 627 scrapers from a construction site near South Shore in Codington County to Clark, South Dakota. Traveling in a convoy, Daniel Geise was operating a tractor-trailer combination, which was hauling one of the Cat 627 scrapers, while Roland Clausen and David Clausen drove the other two Cat 627 scrapers. Around 11:20 a.m., Highway Patrol Officer Dale Kotzea stopped the convoy on County Highway 4 near its intersection with County Highway 11 and requested the proper single trip overweight permits. Neither Geise nor the Clausens had permits. Officer Kotzea decided to weigh the vehicles and called for assistance. Soon thereafter, three more troopers arrived on the scene to assist in weighing the vehicles with portable scales.

[¶ 3.] The tractor-trailer combination operated by Geise had seven axles. Specifically, the tractor had a steering axle and triple tandem axles located under the front of the trailer. Similarly, the trailer had triple tandem axles to the rear. The individual axle weights were as follows:

| | |
|---|---|
| Axle 1 | 6,100 pounds |
| Axle 2 | 17,400 pounds |
| Axle 3 | 13,900 pounds |
| Axle 4 | 15,250 pounds |
| Axle 5 | 19,700 pounds |
| Axle 6 | 20,050 pounds |
| Axle 7 | 19,800 pounds |

[¶ 4.] Thereafter, the Highway Patrol used a computer generated illustration to determine the weights and possible fines. In doing so, Officer Kotzea measured various axle groups within the outer most axles to determine whether any overweight violations existed under the "bridge formula" codified in SDCL 32–22–16.1. Officer Kotzea measured the length between the second and seventh axles on Geise's tractor-trailer as 52 feet with a total of six axles measured in the axle group. The total weight of the axle bridge 2–7, 106,100 pounds, was calculated by adding the individual weights of Axles 2, 3, 4, 5, 6, and 7. According to the bridge formula, the maximum weight limit for the "bridge" or span between Axles 2 and 7 on Geise's tractor-trailer was 85,000 pounds. Because the bridge weighed 106,100 pounds, the legal limit was exceeded by 21,100 pounds (106,100–85,000 = 21,100). Under SDCL 32–22–55, Geise was subject to a civil penalty of 37.5 cents per pound for 21,100 pounds for a total of $7,912.50. Under SDCL 32–22–56 (now repealed), the civil penalty would be doubled to $15,958. He was also subject to a penal fine of $133.

[¶ 5.] Similarly, the troopers prepared computer generated illustrations of the weights, violations, and possible fines related to the two scrapers. Both Cat 627 scrapers had two axles that were spaced 24 feet apart. Using the "bridge formula," the troopers calculated that the maximum allowable weight for each scraper was 40,000 pounds (20,000 pounds per axle). Both scrapers were well over the allowable weight limit. The gross weight of the first scraper driven by Roland Clausen totaled 66,250 pounds, with Axle 1 weighing 36,000 pounds and Axle 2 weighing 30,250 pounds. Roland Clausen was subject to a civil penalty of 37.5 cents per pound for 26,250 pounds for a total of $9,843.75. Under former SDCL 32–22–56, the penalty would be doubled to $19,820.50, and his penal fine would be $133.

[¶ 6.] The second scraper driven by David Clausen weighed in at 39,400 pounds on Axle 1 and 31,000 pounds on Axle 2. David Clausen was subject to a civil penalty of 37.5 cents per pound for 30,400 pounds for a total of $11,400. Under former SDCL 32–22–56, this penalty would be doubled to $22,800. He was also subject to a penal fine of $133.

[¶ 7.] After Geise and the Clausens were stopped and cited for overweight violations, they were issued permits by the Highway Patrol. Each permit was valid for one day of travel on the state highways specified and required the scrapers to be hauled rather than driven on the highway. The Codington County Highway Superintendent, Rick Small, also issued a permit to allow travel on specified county roads.

[¶ 8.] In court, Daniel Geise, Roland Clausen and David Clausen moved to dismiss the double penalties. The circuit court ruled that the double penalties under SDCL 32-22-56 did not apply.[1] After eliminating the doubling of the civil penalties, the circuit court convicted Daniel Geise, Roland Clausen and David Clausen of overweight violations and assessed their penalties at $7912.50, $9843.75, and $11,400 respectively. In addition, they were each assessed costs of $30.

[¶ 9.] All three defendants now appeal on the following issues: (1) "Whether a 'group' of axles for purposes of SDCL §§ 32-22-16(3), 32-22-16.1 and 32-22-55 includes a so-called 'bridge' of axles in light of the Highway Patrol's own interpretation and classification of the axles on Appellants' vehicles and *State v. Young*, 2001 SD 76, 630 N.W.2d 85." (2) "Whether the State properly charged Appellants Clausen and Clausen who were driving single-axle scrapers and given 'warning' tickets for alleged violations of SDCL § 32-22-16(1) governing the allowable weight on any 'one axle,' and who were charged under §§ 32-33-16(3) and 32-22-16.1 which govern the allowable weight on any 'group of two or more consecutive axles.'" (3) "Whether there is any rational legal basis under SDCL §§ 32-22-16(3) and 32-22-16.1 to charge the two scrapers

with overweight since they are supported by unconventionally wide tire configurations, and the South Dakota Department of Transportation recognizes that the effects of such tire configurations are not known and it is impossible to determine whether present weight regulations are too strict, too loose, or appropriate." (4) "Whether this Court should reconsider its holding in *State v. Feiok*, 364 N.W.2d 536 (S.D.1985) that SDCL § 32-22-55 is civil in nature and that the state does not have to prove actual damage to the highway by the overweight vehicle, due to its having overlooked and/or miscomprehended § 32-22-43 and 48 which impose civil liability in separate proceedings for any actual damages caused to the highway which would allow a double recovery, and the DOT research project mentioned in the previous issue." (5) "Whether the overweight provisions of SDCL § 32-22 are facially unconstitutional because of unequal penalties for identical violations contrary to Art. VI, § 18 of the South Dakota Constitution, and the Equal Protection Clause of the Fourteenth Amendment of the United States Constitution." (6) "Whether Chapter 32-22 is unconstitutionally arbitrary and capricious and/or discriminatory and violative of equal protection guarantees as applied to permit vs. non-permit vehicles." (7) "Whether due to changed circumstances since this Court's divided opinion in *Feiok, supra,* SDCL § 32-22-55 must be deemed so punitive either in purpose, or in effect as to negate the Legislature's intention to impose purely a civil penalty in light of the very substantial fines imposed against Appellants, in light of the auction value of the scrapers of $21,390, and other factors not considered by this Court in the *Feiok, supra,* decision." (8)

---

1. As this issue was not appealed, we offer no opinion on the correctness of the circuit court's ruling.

"A fine/penalty of $11,400, $9,843.75 or $7,912.50 for a single Class 2 misdemeanor violation is so grossly excessive, and/or manifestly disproportionate to the crime as violative of the due process prohibition against the taking of property under South Dakota Constitution Art. VI, § 2, and the Fourteenth Amendment to the Constitution of the United States, and/or additionally, contrary to the prohibition against excessive fines in South Dakota Constitution Art. VI, § 23 and the Eighth Amendment to the Constitution of the United States."

### Standard of Review

[¶ 10.] We review questions of law, such as statutory construction and constitutional challenges, de novo. *State v. Barton*, 2001 SD 52, ¶ 8, 625 N.W.2d 275, 278. The primary purpose of statutory construction is to determine the intent of the law. *Id.* Intent is ordinarily ascertained by examining the express language of the statute. *Faircloth v. Raven Industries, Inc.*, 2000 SD 158, ¶ 6, 620 N.W.2d 198, 201. We therefore defer to the text where possible. *Id.* We read statutes as a whole along with the enactments relating to the same subject. *Kayser v. South Dakota State Elec. Comm'n*, 512 N.W.2d 746, 747 (S.D.1994) (citations omitted). We assume that the Legislature intended that no part of its statutory scheme be rendered mere surplusage. *Nat'l Farmers Union Prop. and Cas. Co. v. Universal*

*Underwriters Ins. Co.*, 534 N.W.2d 63, 65 (citing *Revier v. School Bd. of Sioux Falls*, 300 N.W.2d 55, 57 (S.D.1981)); 2A Norman J. Singer, Sutherland Statutory Construction § 46.07, 205 (6th ed 2000). Likewise, when an asserted error implicates an infringement of a constitutional right, we employ a de novo standard of review. *State v. Dillon*, 2001 SD 97, ¶ 12, 632 N.W.2d 37, 43.

### Analysis and Decision

#### 1. Group of Axles

[¶ 11.] Defendants argue that the term "bridge" does not appear in SDCL 32–22–16(3), 32–22–16.1, or 32–22–55. They ask this Court to define the term "group" as used in these statutes. Although we have never specifically addressed whether a person can be found in violation of a "bridge" weight, when the statutes in SDCL ch. 32–22 never mention the term "bridge" and instead use the term "group," we have previously found a person in violation of SDCL ch. 32–22 for a bridge weight violation on Axles 2–7.[2] *State v. Downs*, 2002 SD 56, 645 N.W.2d 238.

[¶ 12.] Nearly every state has a so-called "bridge formula" statute similar to SDCL 32–22–16.1.[3] The state bridge formula statutes derive from 23 USC § 127, which ties the receipt of federal highway funds to enforcement of vehicle weight limitations and provides a formula for calcu-

---

**2.** "Group" is defined as "1. An assemblage of ... objects gathered or located together; ... 3. A number of individuals or things considered together because of similarities." American Heritage Dictionary 579 (2d ed 1982).

**3.** SDCL 32–22–16.1 entitled "Formula for weight on group of consecutive axles." provides:

For the purposes of § 32–22–16 the maximum gross weight on a group of two or more consecutive axles allowable on a pub-

lic highway shall be determined by the following formula:

$$W = 500 [LN/(N-1) + 12N + 36]$$

In applying the above formula, "W" equals the overall gross weight on any group of two or more consecutive axles to the nearest five hundred pounds, "L" equals the distance measured longitudinally to the nearest foot from the foremost axles to the rearmost axle in a group of two or more consecutive axles, and "N" equals the number of axles in group under consideration.

lating weight violations. 23 USC § 127. Thus, other jurisdictions have had an opportunity to address this issue.

[¶ 13.] Interpreting a bridge formula statute, the Illinois Supreme Court found that the argument regarding the terms "bridge" and "gross" weight is an argument of "semantic differences." *People v. Conlan*, 189 Ill.2d 286, 244 Ill.Dec. 350, 725 N.E.2d 1237, 1242 (2000). The *Conlan* court pointed out that violations charged as "bridge" or "gross" weight violations are essentially all "bridge" violations because they allege excessive weight, or load, over an area spanning certain consecutive axles. *Id.* at 1241–42. If the extreme axles on a vehicle, front and rear, are being considered, and the total weight exceeds allowable limits, a gross weight violation has occurred in the traditional sense. *Id.* at 1242. If, on the other hand, excessive weight exists over consecutive inner axles, then what is apparently referred to as an "inner bridge" violation has occurred. *Id.* Here, Geise had an "inner bridge" violation and Roland and David Clausen had traditional gross weight violations.

[¶ 14.] SDCL 32–22–16.1 provides that "for the purposes of § 32–22–16 the maximum *gross weight on a group of two or more consecutive axles* " shall be determined by a formula, commonly referred to as the "bridge" formula (emphasis added). It is apparent that the Legislature intended the term "group" to encompass a variety of axle configurations that can exist on a vehicle. This can be deduced by the Legislature's inclusion of the term "gross weight" in SDCL 32–22–16.1. Gross weight means total weight of the vehicle. *Young*, 2001 SD 76 at ¶ 6, 630 N.W.2d at 87–88 (recognizing that an overweight violation may be assessed on the total weight of the vehicle, a sum of its individual axles, or an individual axle).

In calculating the total weight of a vehicle, all the axles on the vehicle would be included. Therefore, by implication, we conclude that a "group" of axles can encompass all the axles on a vehicle to calculate a gross weight violation (i.e. the Clausens) or a "group" of axles can encompass any "two or more consecutive axles" which constitute a weight violation (i.e. Geise). *See Commonwealth v. Byers*, 35 PaD & C3d 470, 474, n1, 1984 WL 2506 (Pa.Com.Pl.1984) ("While the statute uses the language 'two or more consecutive axles' it is apparent that this language is referring to all the axles. At least in this case all axles were used in the calculation.").

[¶ 15.] Furthermore, the term "bridge" violation is commonly used to describe a weight violation on a "group of two or more consecutive axles." Therefore, we conclude that a "group" of axles means a "bridge" of axles and vice-versa. The circuit court did not err on this question.

## 2. Warning Tickets

[¶ 16.] The Clausens maintain that they were improperly charged under SDCL 32–22–16(3) and 32–22–16.1 because they were also given warning tickets under SDCL 32–22–16(1). Aggrieved parties may only appeal from final judgments or orders. SDCL 13–46–7. A warning ticket is not a final judgment or order.

[¶ 17.] In addition, the Clausens' argument is premised upon their contention in the above issue concerning the meaning of the term "group." The definition of the term "group" is irrelevant to this issue and the Clausens have cited no authority in their argument. Failure to cite supporting authority is a violation of SDCL 15–26A–60(6) and constitutes a waiver of the issue. *State v. Pellegrino*, 1998 SD 39, ¶ 22, 577 N.W.2d 590, 599; *State v. Knoche*, 515 N.W.2d 834, 840 (S.D.

1994); *State v. Dixon*, 419 N.W.2d 699, 701 (S.D.1988). For the foregoing reasons, we find the Clausens' argument meritless.

### 3. Unconventionally Wide Tire Configurations

[¶ 18.] The Clausens argue that they should not have been convicted of an overweight violation under SDCL 32–22–16(3) and 32–22–16.1 because the "unconventionally wide" tires on the scrapers fall under an exception for the maximum weight per tire found in SDCL 32–22–22. The tire weight provision in SDCL 32–22–21 is not an exception to the gross weight statutes because SDCL 32–22–21 specifically states that "[i]n no instance may the weight on any axle or combination of axles exceed the maximum weight limits specified in § 32–22–16." Thus, the plain language of SDCL 32–22–21 provides that the gross weight statute SDCL 32–22–16 trumps the tire weight provision in SDCL 32–22–21. Therefore, there was no tire weight exception available and the Clausens were properly cited for gross weight violations under SDCL 32–22–16.

[¶ 19.] To support their argument, the Clausens refer to a study earlier performed for the DOT. This is irrelevant. Despite knowledge of the study, the Legislature has not created a tire weight exception. If the Legislature intended to create such an exception, it certainly could have done so. Given that the Clausens have failed to cite any authority for their due process argument, the argument is deemed waived and will not be addressed. *Pellegrino*, 1998 SD 39 at ¶ 22, 577 N.W.2d at 599; *Knoche*, 515 N.W.2d at 840; *Dixon*, 419 N.W.2d at 701.

### 4. Excessive Civil Penalty

[¶ 20.] First, defendants maintain that the excessive fines for overweight vehicles are not civil in nature and request that this Court reconsider its holding in *Feiok*, 364 N.W.2d 536. Recently, we re-examined our holding in *Feiok* regarding whether overweight truck fines are civil in nature. *Barton*, 2001 SD 52, 625 N.W.2d 275. In *Feiok*, after considering the seven factors set forth in *Kennedy v. Mendoza–Martinez*, 372 U.S. 144, 83 S.Ct. 554, 9 L.Ed.2d 644 (1963), we held that the overweight fines were not so punitive as to negate the Legislature's intention to impose a civil penalty. *Barton*, 2001 SD 52 at ¶ 33, 625 N.W.2d at 282–83. Although we reaffirmed our *Feiok* holding in *Barton*, we will nonetheless analyze here whether the penalty for an overweight vehicle is civil or criminal in nature.

[¶ 21.] In *Feiok*, we outlined the analysis for deciding whether a penalty is civil or criminal in nature. *State v. Barber*, 427 N.W.2d 375, 376 (S.D.1988). First, it must be determined whether the Legislature indicated an express or implied preference for one label or the other in establishing the penalizing mechanism. *Feiok*, 364 N.W.2d at 538. If this review indicates that the Legislature intended to establish a civil penalty, the second step is to ascertain whether the statutory scheme is so punitive either in purpose or in effect as to negate that intention and turn the civil penalty into a criminal penalty. *Id.* at 538–39.

[¶ 22.] Applying the first step of the analysis, we are convinced that the Legislature intended to establish a civil penalty in SDCL 32–22–55, in addition to the criminal penalty for overweight vehicles. In *Feiok*, we reached this conclusion for two reasons. First, well after the criminal penalty for overweight trucks was enacted in 1929, the predecessor statute to SDCL 32–22–55 was enacted and established a civil penalty for overweight vehicles in 1951. *Feiok*, 364 N.W.2d at 539. Second, if the Legislature had intended that the

sanctions provided by SDCL 32–22–55 be penal in nature, it would have reclassified the violation of SDCL 32–22–16 from a Class 2 misdemeanor to a Class 1 misdemeanor or a felony. *Id.*

[¶ 23.] The next step in our analysis is to determine whether, despite the Legislature's intent to establish a civil penalty for overweight vehicles, the statutory scheme is so punitive in purpose or effect as to negate this intention. *Id.* at 540. When determining whether a penalty is punitive in nature, the seven factors to consider are:

(1) Whether the sanction involves an affirmative disability or restraint, (2) whether it has historically been regarded as a punishment, (3) whether it comes into play only on a finding of scienter, (4) whether its operation will promote the traditional aims of punishment—retribution and deterrence, (5) whether the behavior to which it applies is already a crime, (6) whether an alternative purpose to which it may rationally be connected is assignable for it, and (7) whether it appears excessive in relation to the alternative purpose assigned.

*Barton,* 2001 SD 52 at ¶ 33, n3, 625 N.W.2d at 282–83 (citing *Feiok,* 364 N.W.2d at 540 (quoting *Kennedy,* 372 U.S. at 168, 83 S.Ct. at 567–68, 9 L.Ed.2d at 661)). *See State v. Goffe,* 41 Conn.App. 454, 676 A.2d 1377 (1996) for an analysis of each of the above seven factors as applied to an overweight vehicle statute.

[¶ 24.] The *Feiok* court concluded that only the fifth and seventh factors were relevant. *Feiok,* 364 N.W.2d at 540. With respect to the fifth factor, whether the behavior to which the sanction imposed by SDCL 32–22–55 is already a crime, the Court noted that the Legislature may provide that one single act may result in both a civil and a criminal sanction. *Id.* (citing *United States v. Ward,* 448 U.S. 242, 248,

100 S.Ct. 2636, 2641, 65 L.Ed.2d 742, 749 (1980)). Again, the substantial length of time (22 years) between the enactment of the criminal penalty and the enactment of the subsequent civil penalty (SDCL 32–22–55) repudiates the notion that the penalty in SDCL 32–22–55 is criminal in nature. *Feiok,* 364 N.W.2d at 540. Likewise, with respect to the seventh factor, whether the penalty is excessive in relation to the purpose assigned to it, the *Feiok* court found that the penalties authorized by SDCL 32–22–55, although certainly "not insubstantial," are not so clearly excessive as to bear no relationship to the purpose for which they were imposed. *Id.*

[¶ 25.] We find the reasoning in *Feiok* persuasive. We reaffirm the holding in *Feiok* that the penalties of SDCL 32–22–55 are civil in nature. Although we recognize that the civil penalties are "not insubstantial," in most instances the Legislature is in a better position to discern the appropriate gradations for civil penalties.

[¶ 26.] Second, defendants submit that it would be unreasonable to construe SDCL ch. 32–22 to allow a civil penalty for an overweight vehicle, without proof of any actual damage, potentially leaving them subject to a later civil action for actual damages. Again, we have previously addressed this issue in *Feiok.* There, we held that the "imposition of a penalty based upon the amount by which a vehicle is overweight is a reasonable way for the state to police the [motor vehicle] weight restrictions." 364 N.W.2d at 540 (citing *State ex rel. Hjelle v. A Motor Vehicle, etc.,* 299 N.W.2d 557 (N.D.1980)). Further, this Court held in *Feiok,* that to require the state to demonstrate actual damage to a highway caused by an overweight vehicle "would for all practical purposes render any statute imposing a civil cost penalty upon overweight vehicles unenforceable." 364 N.W.2d at 540.

[¶ 27.] Other jurisdictions have also addressed this issue. The Supreme Court of North Dakota held that the operator of an overweight truck did not receive an unduly harsh fine when he was cited for driving one mile on a road under construction and no actual damage to the road was found. *Hjelle*, 299 N.W.2d at 563. Moreover, the North Dakota court ruled that the overweight penalty was for "extraordinary use of the highway, not for actual damage, and there is no burden on the state to prove actual damage." *Id.* Ultimately, the *Hjelle* court found it reasonable to assess an overweight civil penalty on a pro rata basis. *Id.*

[¶ 28.] We conclude that actual damage is not a condition precedent to the imposition of a civil penalty. Again, we note that defendants have failed to cite any supporting authority for their double jeopardy argument and thus it will not be addressed.

### 5. Equal Protection.

[¶ 29.] We next consider the defendants' contention that the overweight statutes violate their rights to equal protection of the laws. At the outset, we note that "[a]ny legislative act is accorded a presumption in favor of constitutionality and that presumption is not overcome until the act is clearly and unmistakably shown beyond a reasonable doubt to violate fundamental constitutional principles." *Americana Healthcare Center v. Randall*, 513 N.W.2d 566, 572 (S.D.1994). Moreover, setting classifications is primarily for the Legislature and we will not interfere

"unless the classification is clearly arbitrary and unreasonable." *Berens v. Chicago, Milwaukee, St. Paul & Pacific R.Co.*, 80 S.D. 168, 120 N.W.2d 565, 570–71 (1963).

[¶ 30.] The equal protection clauses embodied in the Fourteenth Amendment to the United States Constitution and in Art. VI, § 18 of the South Dakota Constitution guarantee equal protection of the laws for all citizens of the state. The statutes in SDCL ch. 32–22 do not encompass a fundamental right, a suspect classification, or an intermediate scrutiny classification; thus, the rational basis test is applicable.[4] In *City of Aberdeen v. Meidinger*, 89 S.D. 412, 233 N.W.2d 331 (1975), this Court set forth a two-pronged test to determine, under rational basis analysis, whether a statute violates the constitutional right to equal protection under the laws. The first part of the test is whether the statute sets up arbitrary classifications among various persons subject to it. *Id.* at 333. The second part of the test is whether there is a rational relationship between the classification and some legitimate legislative purpose. *Id.*

[¶ 31.] In applying the first prong, we look to see if the overweight statutes of SDCL ch. 32–22 apply equally to all people. *Lyons v. Lederle Laboratories, A Div. of American Cyanamid Co.*, 440 N.W.2d 769, 771 (S.D.1989) (citing *Janish v. Murtha*, 285 N.W.2d 708, 709 (S.D.1979)). Defendants contend that the classifications are arbitrary and not related to protecting roads from damage be-

---

4. In both federal and state equal protection analysis, there are three tests to be applied depending upon the nature of the interest involved. First, the strict scrutiny test applies only to fundamental rights or suspect classes. *Budahl v. Gordon and David Associates*, 287 N.W.2d 489 (S.D.1980). Second, the intermediate or substantial relation test applies to legitimacy and gender. *See State ex rel Wieber v. Hennings*, 311 N.W.2d 41, 42 (S.D.1981); *Reed v. Reed*, 404 U.S. 71, 92 S.Ct. 251, 30 L.Ed.2d 225 (1971). Lastly, the rational basis test applies to all other classes. *Eischen v. Minnehaha County*, 363 N.W.2d 199, 201 (S.D.1985) (citations omitted).

cause the Legislature makes a distinction between the types of loads and the nature of certain vehicles. Essentially, they argue that weight is weight and that identical amounts of weight damage the road equally, regardless of whether that weight is exerted by a construction vehicle, an agricultural vehicle, an emergency vehicle, or a sludge vehicle. Equal protection applies to persons, not vehicles.

[¶ 32.] Equal protection of the law requires that the rights of every person must be governed by the same rule of law, *under similar circumstances. Eischen,* 363 N.W.2d 199, 201; *Meidinger,* 89 S.D. 412, 233 N.W.2d at 333–34; *State v. King,* 82 S.D. 514, 149 N.W.2d 509, 510 (1967) (emphasis added). Equal protection does not require that all persons be dealt with identically, but it does require that a distinction made have some relevance to the purpose for which the classification is made. *Meidinger,* 89 S.D. 412, 233 N.W.2d at 334. Defendants incorrectly premise their argument on the type of vehicle being operated or the type of load that operators are hauling and the penalties they are subject to. Rather, the proper focus is on the identity of the operators or drivers and their similar circumstances. The statutes in SDCL ch. 32–22 apply equally to all vehicle operators in similar circumstances. Any other persons who would have been driving either Geise's or one of the Clausens' vehicles, regardless of their occupations, would have been subject to the same fines and penalties.

[¶ 33.] The classifications in SDCL ch. 32–22 are not based on who operates the vehicle. Instead, the classifications in SDCL ch. 32–22 are based on loads hauled: agricultural commodities and livestock, farm implements, logs, and solid waste. Further, classifications are also made for vehicle type: farm machinery, anhydrous ammonia tank trailers, fire vehicles, municipal sludge vehicles, tow trucks, and wreckers. In addition, SDCL ch. 32–22 contains classifications for larger vehicles, which serve communities without a railroad. After reviewing the statutory scheme of SDCL ch. 32–22, we conclude that the overweight statutes do not set up arbitrary classifications among persons.

[¶ 34.] Having determined that no arbitrary classification exists, we nonetheless move to the second prong to determine whether there is a rational relationship between the classification and some legitimate legislative purpose. *Meidinger,* 89 S.D. 412, 233 N.W.2d at 333. The exceptions under SDCL ch. 32–22 serve a legitimate purpose. Agriculture accounts for a considerable amount of industry in South Dakota. On several occasions, this Court has recognized the importance of agriculture to the general welfare. *Associated General Contractors of South Dakota, Inc. v. Schreiner,* 492 N.W.2d 916, 924 (S.D. 1992); *Wheelon v. South Dakota Land Settlement Board,* 43 S.D. 551, 181 N.W. 359, 361 (1921). The agricultural exceptions provide farmers with minimal five and ten percent weight tolerances to reduce the burden on farmers and to facilitate agricultural activity. Some of the exceptions allow a weight tolerance for agricultural activities, such as hauling commodities from a combine to a point of unloading, hauling commodities from farm storage or livestock from a farm, and moving haystacks. Most of the agricultural commodities, whether grain, livestock, or hay, have variable weights and the loads are prone to shifting, so it is difficult for farmers to know the exact weight on each axle.[5]

---

**5.** For example, the weight of a hay bale may     be significantly affected by moisture and the

On the other hand, construction equipment has a fixed weight and remains stationary during transport, allowing for a more accurate weight estimation.

[¶ 35.] We note that the Legislature has imposed several other restrictions on agricultural vehicles designed to minimize damage to highways. Among these limitations are distance and speed restrictions, travel limited to certain roads, season, and types of tires, with lighting, flagging, permitting, and most notably, weight and size restrictions. Most of these restrictions are not applicable to other motor carriers. Furthermore, there is nothing in the statutory scheme that shields agricultural carriers from overweight violations.

[¶ 36.] Serving a separate legitimate purpose, those operating tow trucks and wreckers are allowed weight tolerances because these vehicles are used for emergencies, implicating public safety. We do not find the limited weight tolerance exemptions for certain industries which are vital to the economy and safety of the state to be arbitrary or in violation of equal protection laws. *See Dep't of Transp. v. Georgia Mining Association,* 252 Ga. 128, 311 S.E.2d 443, 446 (1984). These considerations constitute a legitimate legislative purpose, and we conclude that there is a rational relationship between this legitimate legislative purpose and the classifications based upon industry and the nature and circumstances of the load.

[¶ 37.] In so holding, we are not alone. Many courts have held that overweight statutes are not facially discriminatory and do not violate equal protection guarantees. *Georgia Mining Assn.,* 252 Ga. 128, 311 S.E.2d 443; *Hjelle,* 299 N.W.2d 557; *Dep't*

*of Transp. v. Del–Cook Timber Co., Inc.,* 248 Ga. 734, 285 S.E.2d 913, 919 (1982) ("[i]n the area of economics and social welfare, a State does not violate the Equal Protection Clause merely because the classifications made by its laws are imperfect. If the classification has some 'reasonable basis,' it does not offend the Constitution simply because the classification 'is not made with mathematical nicety or because in practice it results in some inequality' "). We find no error here.

### 6. Arbitrary and Capricious Application

[¶ 38.] Defendants fail to provide authority for their argument that SDCL ch. 32–22 is unconstitutionally arbitrary and capricious or violative of equal protection of the law as applied to permit versus non-permit vehicles. However, we will briefly address the second equal protection argument. As stated in the previous issue, the two-prong test to determine an equal protection violation was set forth in *Meidinger,* 89 S.D. 412, 233 N.W.2d at 333. Defendants fail to show any arbitrary classification regarding permit versus non-permit vehicles.[6] The permitting process set forth in SDCL ch. 32–22 applies equally to all classes similarly situated under the law—operators with permits are treated the same and operators without permits are treated the same. *Eischen,* 363 N.W.2d 199, 201; *Meidinger,* 89 S.D. 412, 233 N.W.2d at 333–34; *King,* 82 S.D. 514, 149 N.W.2d 509, 510. Therefore, the first prong of the *Meidinger* test has not been met.

[¶ 39.] Although further review of this issue is not necessary, it is apparent that defendants fail to meet the second

---

type of plant material (i.e. wheat straw or alfalfa) involved. Similarly, livestock may move around a trailer during transport altering the weight on each axle.

**6.** Defendants did not seek to obtain a permit before they were cited for these overweight violations.

prong of the *Meidinger* test as well. Whether a vehicle receives a permit is rationally related to public safety and to the legitimate legislative purpose of protecting public roads from damage caused by overweight vehicles. *Meidinger*, 89 S.D. 412, 233 N.W.2d at 333–34. Specifically, there is more of a difference between operators who purchase a proper overweight permit and those who do not than just the purchase price of the permit. First, an operator must obtain authorization from the Division of Highway Patrol in order to obtain a permit to move an overweight vehicle.[7] Second, the permit obtained by an operator is restricted to a single trip. SDCL 32–22–38. Third, the Highway Patrol designates the route that the operator must take for the single trip. Moreover, issuance of a permit is within the discretion of the Highway Patrol. For these reasons, we conclude that SDCL ch. 32–22, as it relates to permit and non-permit vehicles, is not unconstitutionally arbitrary and capricious and that it does not violate equal protection guarantees.

### 7. Excessive Civil Penalties

■■■ [¶ 40.] In issue four, we reaffirmed our holding in *Feiok* that penalties under SDCL 32–22–55 are civil in nature. In addition to our restatement of the *Feiok* analysis regarding whether a penalty is civil or criminal in nature, the *Feiok* Court held "that notwithstanding the use of the words 'shall be fined' and 'fine schedule' in SDCL 32–22–55, the [L]egislature intended to impose an additional sanction in the nature of a civil penalty." *Feiok*, 364 N.W.2d at 539–40. The Legislature has had ample time to amend SDCL 32–22–55 to provide that the penalties were penal rather than civil if it disagreed with the decision in *Feiok*. Although we recognize that these civil penalties result in heavy financial sanctions, we do not find them to be excessive. The issue regarding how a penalty should be calculated is best left to the Legislature.

### 8. Due Process Violation

■■■ [¶ 41.] The Eighth Amendment states, "excessive bail shall not be required, nor excessive fines imposed, nor cruel and unusual punishment inflicted." This guarantee protects against fines that are grossly disproportionate to the offense. *Austin v. United States*, 509 U.S. 602, 113 S.Ct. 2801, 125 L.Ed.2d 488 (1993). The constitutional inquiry regarding excessive fines is proportionality: the amount of the fine must bear some relationship to the gravity of the offense that it is designed to punish. *Id.* at 622–23, 113 S.Ct. at 2812; *U.S. v. Ursery*, 518 U.S. 267, 283, 116 S.Ct. 2135, 2145, 135 L.Ed.2d 549 (1996). Furthermore, the Eighth Amendment proscription against excessive fines applies to fines imposed by the government in civil actions. *Austin*, 509 U.S. at 610, 113 S.Ct. at 2806. The civil penalties for overweight violations imposed on defendants are not disproportionate when we consider the amount of money the State expends maintaining its highway system and protecting the safety of the public using those highways.

[¶ 42.] Jurisdictions addressing similar issues have held that the purposes of the

---

7. Defendants were intercepted on Codington County Highway 4. That county's Highway Superintendent testified that he did not believe that the state's weight restrictions applied to county roads. Accordingly, defendants argue that the overweight provisions of SDCL ch. 32–22 apply only to "state trunk highways." However, SDCL 32–22–16 clearly states that it applies to "public highways." A county highway is a public highway. Compare SDCL 32–22–2 (prohibiting movement of certain farm machinery "upon any public highway on the state trunk system.")

overweight provisions are to protect the roads from damage and to insure the safety of the travelling public. *Goffe*, 676 A.2d at 1385; *Commonwealth v. Smith*, 409 Pa. 521, 187 A.2d 267, 270 (1963). Because overweight sanctions have the effect of deterring overweight violations, courts have found that strict civil sanctions are not excessive. *Id.; Goffe*, 676 A.2d at 1385. The reasons for so concluding are several: first, the courts considered the amount of money expended by the State to enforce these statutes. *Id.; Smith*, 187 A.2d at 270. Second, these courts reasoned that operators of overweight vehicles are chargeable with the knowledge of the graduated fine structure. *Id.* (the Legislature's decision to graduate and increase the amount of the fines "was not irrational or unreasonable, but on the contrary was quite sensible"); *Goffe*, 676 A.2d at 1385. Thus, keeping in mind the object to be accomplished and the importance of the public interest, these courts found that the overweight sanctions were not excessive. *Id.; Smith*, 187 A.2d at 270.

[¶ 43.] In *Feiok*, we considered whether the fines imposed for violations of SDCL ch. 32–22 were unconstitutional as "excessive fines" and concluded that although the fines were certainly "not insubstantial," they were not so clearly excessive as to bear no relationship to the purpose for which they are imposed. 364 N.W.2d 536. Similarly, in *Barton*, it was argued that the increase in fines since the time of *Feiok*, should cause this Court to reconsider its previous ruling. *Barton*, 2001 SD 52 at ¶ 33, 625 N.W.2d at 282–83. We stood by our *Feiok* ruling in *Barton*, affirming the defendant's $11,425 civil penalty for an overweight violation. *Id.* We reaffirm our holding in *Feiok*.

[¶ 44.] Next, defendants argue that the penalty imposed by SDCL 32–22–55 constitutes a "taking" under Art. VI, § 2 of the South Dakota Constitution and the Fourteenth Amendment to the United States Constitution. In *Cody v. Leapley*, 476 N.W.2d 257, 260 (S.D.1991), we said that "where the [L]egislature, in the implementation of its constitutional powers, provides for penalties, such as forfeitures, such action is not a taking of private property in a constitutional sense." The civil overweight penalties imposed on Geise and the Clausens, although not forfeitures, are nonetheless penalties imposed by the Legislature and are, therefore, not a taking of private property.

[¶ 45.] Finally, defendants again contend that their rights to due process have been violated. Here the government is not depriving anyone of a vested liberty or property right without due process of law. Defendants are entitled to argue the facts and dispute them before the court, as they have done. We conclude that they have been given all the process that is due to them in accord with the procedural safeguards afforded to them under SDCL 32–22–16. *See Feiok*, 364 N.W.2d at 541.

[¶ 46.] Affirmed.

[¶ 47.] GILBERTSON, Chief Justice, and SABERS, and ZINTER, Justices, and AMUNDSON, Retired Justice, concur.

[¶ 48.] MEIERHENRY, Justice, not having been a member of the Court at the time this action was submitted to the Court, did not participate.